**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Jesse Lee SHAW, Defendant–Appellee.**

**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Anthony WILSON, Defendant–Appellee.**

**Nos. 90–50242, CR–89–0243–TJH–2.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 4, 1991.

Decided June 11, 1991.

Thomas H. Bienert, Jr., Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellant.

Paul E. Potter, Potter & Cohen, Pasadena, Cal., Robert K. Weinberg, Weinberg & Weinberg, Irvine, Cal., for defendants-appellees.

Before CANBY, Jr. and RYMER, Circuit Judges, and LEVI,* District Judge.

RYMER, Circuit Judge:

Defendants Shaw and Wilson were convicted for distributing a controlled substance in violation of 21 U.S.C. § 841(a)(1). The district court sentenced them as though they had distributed "cocaine" as opposed to "cocaine base" because it held that "cocaine base" only refers to cocaine compounds containing a hydroxylion and the government had failed to show that the rock cocaine involved in this case contained a hydroxylion. The government appeals the sentence on the ground that the district court applied an erroneous definition of "cocaine base." We vacate and remand.

I

Shaw was charged with three counts of distributing a substance containing cocaine base in violation of 21 U.S.C. § 841(a)(1). Two of the counts were for distributing more than 50 grams, and the total amount charged in the three counts was 223.8 grams. Wilson was charged with one count of distributing a substance containing cocaine base, in the amount of 136 grams.

At trial, the government presented expert testimony that the substance the defendants distributed was cocaine base. The government's chemist testified that the

* The Honorable David F. Levi, United States District Judge for the Eastern District of California, sitting by designation.

substances in question were rock cocaine. He also testified that the cocaine compound in the rock cocaine was cocaine base ($C_{17}H_{21}O_4N$), as compared with cocaine hydrochloride ($C_{17}H_{21}O_4N.HCl$). He explained that one makes rock cocaine by combining cocaine hydrochloride with water and sodium bicarbonate, and that process neutralizes the hydrochloride so that the $C_{17}H_{21}O_4N.HCl$ compound is reduced to the $C_{17}H_{21}O_4N$ compound. Because the melting point of rock cocaine is much lower than cocaine hydrochloride, the chemist explained that it can be smoked rather than snorted, which allows it to be absorbed into the bloodstream much more quickly than cocaine hydrochloride.

The district court instructed the jury that to find the defendants guilty, it did not need to find that the defendants knew that the substance they distributed was cocaine base as long as it found that they intentionally distributed some controlled substance. The jury found both Shaw and Wilson guilty.

At sentencing, the defendants argued that they could only be sentenced for distributing "cocaine" and not "cocaine base" because the government's chemist had failed to distinguish adequately between the two when he testified that the substance involved was cocaine base. The penalties for distributing cocaine base are much more severe than the penalties for distributing cocaine. Because both Shaw and Wilson distributed between 50 and 500 grams of the controlled substance, they would be subject to a 10 year statutory minimum sentence if the substance were cocaine base, 21 U.S.C. § 841(b)(1)(A)(iii), but they would not be subject to any statutory minimum if it were cocaine, 21 U.S.C. § 841(b)(1)(C). Under the sentencing guidelines, Shaw's and Wilson's base offense levels would be 34 and 32, respectively, if the substance were cocaine base, but they would be 20 and 18, respectively, if it were cocaine. U.S.S.G. § 2D1.1.

Shaw and Wilson contend that the government failed to establish that the substance was cocaine base because they claim that the legal definition of "cocaine base"

is a cocaine compound containing a hydroxylion (OH−) such that it is a "base," as that term is used in chemistry. Because the government's expert witness did not say anything about the presence of a hydroxylion, the defendants contend they could only be sentenced under the lesser penalties for cocaine rather than the higher penalties for cocaine base.

The government responds that defining cocaine base as a cocaine compound containing a hydroxylion is not the only way it can be defined. The government's position is that so long as cocaine base is objectively distinguished from cocaine hydrochloride, a defendant may be sentenced for distributing cocaine base. In this case, the chemist testified that cocaine base has a distinguishable chemical formula and has different properties from cocaine hydrochloride, and he identified the substance involved here as cocaine base. Thus, the government contends, the defendants are subject to the higher penalties for cocaine base.

The district court agreed with the defendants' definition of cocaine base and concluded that they could only be sentenced for distributing cocaine because the evidence did not establish that the substance in this case contained a hydroxylion. It therefore sentenced Shaw to 78 months, at the top of the guideline range for an offense level of 20 and a criminal history category of V, and it sentenced Wilson to 35 months, in the middle of the range for an offense level of 18 and a criminal history category of II. The government appeals.

II

The government may appeal the district court's sentence because it was imposed in violation of 21 U.S.C. § 841(b)(1)(A)(iii) and because it was imposed as the result of an incorrect application of the guidelines. 18 U.S.C. § 3742(b). The interpretation of the term "cocaine base" in 21 U.S.C. § 841(b) and U.S.S.G. § 2D1.1 is a legal question, which we review de novo. *See United States v. Wiegand,* 812 F.2d 1239, 1244 (9th Cir.) (definition of "lascivious" is matter of law reviewed de novo), *cert. denied,* 484

U.S. 856, 108 S.Ct. 164, 98 L.Ed.2d 118 (1987).

The defendants rely on two cases to show that the legal definition of cocaine base is a cocaine compound that contains a hydroxylion. First, the District of Columbia Circuit held that 21 U.S.C. § 841(b) is not unconstitutionally vague for failing to define cocaine base. *United States v. Brown*, 859 F.2d 974 (D.C.Cir.1988) (per curiam). Although the court did not expressly state what the correct definition of cocaine base is, it stated that the government had adopted the nomenclature of organic chemistry and defined cocaine base as any cocaine with the hydroxyl radical (OH−).[1] *Id.* at 975–76. The court reasoned that this chemical definition excludes salt forms of cocaine and therefore is not unconstitutionally vague because it performs a limiting function. *Id.* at 976.

We similarly held that 21 U.S.C. § 841(b) was not unconstitutionally vague because the expert testimony in the case indicated that the term "cocaine base" excludes cocaine hydrochloride. *United States v. Van Hawkins*, 899 F.2d 852, 854 (9th Cir.1990). In a footnote, the *Van Hawkins* opinion stated: "The term 'cocaine base' is cocaine that contains an active hydroxylion. As such, it is distinguished from cocaine salts. The term cocaine base encompasses 'crack.'" *Id.* at 854 n. 2.

The defendants argue that these cases definitively establish that the definition of cocaine base is cocaine that contains a hydroxylion. We disagree. The holding of both of these cases is simply that 21 U.S.C. § 841(b) is not unconstitutionally vague as long as cocaine base is defined so as to exclude cocaine salts. That holding, however, does not answer the question of what the correct definition of cocaine base is as a matter of statutory interpretation. We face that question for the first time in this case.

■ We construe the statute and the guidelines to be consistent with each other in their use of the term "cocaine base."

The Sentencing Commission has explained that it "used the sentences provided in, and equivalences derived from, the statute (21 U.S.C. § 841(b)(1)), as the primary basis for the guideline sentences." U.S.S.G. § 2D1.1, comment. (n.10). Thus, we presume that the Commission intended the terms they used to have the same meanings as the terms Congress used.

■ Neither the statute nor the guideline define "cocaine base." The commentary to the guideline, however, equates cocaine base with "crack." U.S.S.G. § 2D1.1, comment. (n.10, Drug Equivalency Tables) ("1 gm of Cocaine Base ('Crack') equals 100 gm of cocaine/20 gm of heroin"). The term "crack" generally refers to "[v]ery pure cocaine intended for smoking rather than inhalation." New Dictionary of American Slang 85 (R. Chapman ed.1986). It is synonymous with "rock" cocaine. *Id.* at 361 (defining "rock" as "[a] small cube of very pure cocaine, intended for smoking rather than inhalation").

The legislative history of 21 U.S.C. § 841(b) is consistent with the Commission's interpretation. Congress amended § 841(b) in the Anti–Drug Abuse Act of 1986, Pub.L. No. 99–570, § 1002(2), 100 Stat. 3207, 3207–2, which was an omnibus act incorporating a number of more specific bills. The Senate and the House each had a version of a bill to amend 21 U.S.C. § 841(b). The House version provided tougher penalties for "cocaine freebase," H.R. 5394, 99th Cong., 2d Sess. § 101 (1986), while the Senate version provided penalties for "cocaine base," S. 2878, 99th Cong., 2d Sess. § 1002, 132 Cong.Rec. S13649 (daily ed. Sept. 25, 1986). Congress ultimately enacted the Senate version by incorporating it into H.R. 5484, which became the Anti–Drug Abuse Act of 1986. *See* 132 Cong.Rec. H11219–20 (daily ed. Oct. 17, 1986).

To "freebase" means to "use cocaine by heating it and inhaling the smoke." New Dictionary of American Slang at 147.

---

**1.** Courts, as well as the parties, use the terms "hydroxyl radical" and "hydroxylion" interchangeably to refer to OH−.

Thus, the House version appears consistent with the Commission's explanation because "cocaine freebase" logically would refer to cocaine that could be smoked. The House Committee on the Judiciary also gave that definition to "cocaine freebase." In the same period when the House was considering passage of the amendments to § 841(b), the Committee urged passage of a resolution calling for a White House conference on drug abuse and explained:

> In the summer of 1986, the wave of the cocaine abuse epidemic which had been growing for a decade began to crash upon American cities in the form of "crack." Crack, the street name for cocaine freebase, a preparation of cocaine hydrochloride and sodium bicarbonate, can be smoked and consequently produces intense moments of the cocaine "rush," . . . .

H.R.Rep. No. 99–846, 99th Cong., 2d Sess. 4 (1986).

Nothing in the legislative history indicates that the Senate version intended a different meaning for "cocaine base." Indeed, statements made by sponsors of the legislation in both houses indicate concern primarily with the crack epidemic, and they describe crack as cocaine that is smoked rather than snorted. For example, Representative Frank Annunzio explained, "Today we are seeing a new impetus to cocaine generated by the so-called 'crack,' which is smoked rather than snorted. It is relatively inexpensive and highly dangerous." 132 Cong.Rec. H6544 (daily ed. Sept. 10, 1986). Similarly, Senator Chic Hecht urged support for S. 2878:

> I wish to point out to my colleagues that the escalation of drug abuse is shown not only by the number of this scourge's victims, but may also be measured in the potency and availability of today's illicit drugs. The purified form of cocaine known as "crack," for example, has lead to a number of drug-related deaths.

*Id.* at S13770 (Sept. 26, 1986).

"Such statements by individual legislators should not be given controlling effect, but when they are consistent with the statutory language and other legislative history, they provide evidence of Congress' intent." *Brock v. Pierce County,* 476 U.S. 253, 263, 106 S.Ct. 1834, 1840–41, 90 L.Ed.2d 248 (1986). In this case, the sponsors' statements are consistent with everything else we can deduce from the legislative history, dictionary definitions, and the Sentencing Commission's interpretation. Indeed, we have seen no statements indicating any different interpretation of the term "cocaine base."

Of particular importance to this case, we have seen no statements indicating an interpretation of "cocaine base" as cocaine that contains a hydroxylion. Nor have we seen any statements indicating that "cocaine base" refers to cocaine that is a "base" for chemistry purposes. We conclude that neither Congress nor the Commission intended the term "cocaine base" to be defined by the presence of a hydroxylion or by its testing basic rather than acidic.

Instead, we conclude that Congress and the Commission must have intended the term "cocaine base" to include "crack," or "rock cocaine," which we understand to mean cocaine that can be smoked, unlike cocaine hydrochloride. Because "cocaine base" is thus distinguishable from "cocaine" based on its different functions and effects, this interpretation of the statute and guideline is consistent with the holding in *Van Hawkins,* 899 F.2d 852, that 21 U.S.C. § 841(b) is not unconstitutionally vague so long as cocaine base is objectively distinguishable from cocaine hydrochloride.

The district court therefore erred in defining "cocaine base" to mean cocaine that contains a hydroxylion. We remand to give the district court the opportunity to decide if the facts in evidence establish that the defendants distributed a substance containing "cocaine base," as we have defined that term.

VACATED AND REMANDED.