**UNITED STATES of America**

v.

**Carlos Roberto REYES, Jr., Defendant.**

**No. 91–109–CR.**

United States District Court,
S.D. Florida.

Jan. 15, 1992.

Randy A. Hummel, Asst. U.S. Atty., S.D. Fla., Miami, Fla., for plaintiff.

Paul A. McKenna, Coconut Grove, Fla., for defendant.

## ORDER

MARCUS, District Judge.

THIS CAUSE is before the Court on Defendant's Objection to the Presentence Investigation Report with Respect to Enhanced "Cocaine Base" Penalties. At issue here is whether the term "cocaine base," as used in 21 U.S.C. § 841(b)(1)(A)(iii) and Section 2D1.1(c)(2) of the United States Sentencing Guidelines, is synonymous with *only* "crack," or whether the term "cocaine base" encompasses a greater range of cocaine-oriented substances, and in particular the precise substance here. For the reasons which follow, we conclude that the substance involved in the instant action is punishable as "cocaine base."

### I. BACKGROUND

The Defendant, Carlos Roberto Reyes, Jr. ("Reyes"), was charged by way of a two-count Indictment with (1) the substantive offense of the knowing and intentional possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1), and (2) conspiracy to commit the substantive offense, in violation of 21 U.S.C. § 846. On June 7, 1991, a jury found the Defendant guilty as to both Counts. In the Presentence Investigation Report ("PSI"), the United States Probation Office recommended that the Defendant be punished under Section 2D1.1(c)(2) of the United States Sentencing Guidelines (U.S.S.G.), 18 U.S.C.App. 4, since the offense involved the negotiation of "cocaine base." *See* PSI, at para. 13. The PSI observed that the laboratory analysis of the cocaine seized here revealed that the substance was "cocaine base with 76% purity." *Id.* at para. 8.

The Defendant objects to Paragraph 13 of the PSI, which recommends that he be punished for the negotiation of "cocaine base." Specifically, Defendant asserts that (1) the substance he possessed here was not "cocaine base" as Congress intended that term to mean in both 21 U.S.C. § 841(b)(1)(A)(iii),[1] and as the Sentencing Commission intended it to mean in U.S.S.G. § 2D1.1(c),[2] and (2) both of those statutory sections are unconstitutionally vague as applied to the facts in his case. In Response, the Government argues that (1) the void for vagueness argument has been soundly rejected by a number of courts, and (2) the substance involved here is "cocaine base" for purposes of the penalty and sentencing statutes. Also, the United States Probation Office has responded to Defendant's objections, recommending that "possession of cocaine base and possession of 'crack' [should] be treated similarly and the more stringent penalty [should be] applicable to both." *See* Second Addendum to PSI.

---

1. That section outlines the penalties for persons who commit Section 841(a) violations involving "50 grams or more of a mixture or substance ... which contains cocaine base." 21 U.S.C. § 841(b)(1)(A)(iii).

2. That section provides for a Base Offense Level of 40 for the possession with intent to distribute "[a]t least 5 KG but less than 15 KG of Cocaine Base." U.S.S.G. § 2D1.1(c)(2). In the

The substance at issue here has been defined by Nelson Santos, DEA forensic chemist and lab analyst, as "cocaine base," 76 percent pure. At trial, Mr. Santos characterized the substance as "a tan, chunky substance [that] wasn't fine powder." He further distinguished the instant substance from "simple cocaine" (or cocaine hydrochloride) both as to its chemistry ("it does not contain the hydrochloride portion") and its uses (substance here has lower melting point and is therefore "smokable;" substance here is not water soluble). At Defendant's sentencing, held on December 17, 1991, both Mr. Santos and Dr. Donald Roach, Ph.D., the Defendant's expert, were called to testify; there was, notably, substantial accord in their testimony. Both men agreed that the substance here (a) is "cocaine base," (b) is "smokable" in its present form, (c) has the same melting point as "crack" of the same percentage purity, (d) has the same molecular weight as "crack," (e) has the same chemical formula as "crack," (f) is not water soluble, and (g) has the same effect as "crack" on users. Dr. Roach testified that the substance was "one step away from being 'crack,'" and was therefore not likely to be sold on the street in its present form. Mr. Santos, however, noted that the substance here need only be heated in water to convert it to "crack," and that, in any event, the substance could be sold on the street and smoked in its present form. Mr. Santos further noted that the process of conversion merely changes a substance's physical appearance, and not its chemical properties.

## II. ANALYSIS

Defendant argues that the term "cocaine base" means only "crack" for purposes of punishment and sentencing. We reject so limited a construction. First, the plain language of the statutes here, in choosing the term "cocaine base," counsels against the construction urged by Defendant. Second, even if there were sufficient ambiguity to warrant consideration of legislative history and statutory commentary, the term "crack" itself raises the same definitional issues as the term "cocaine base," since there are both chemical and street meanings attached to both terms. Further, the overwhelming majority of appellate courts to consider the question (generally in the context of vagueness challenges to the statute) have indicated that "crack" is indeed *included* within the term "cocaine base," but have still left open the question presented here of whether other substances are included as well. We therefore reject Defendant's narrow construction of the statutes, and accordingly reject his challenge to the PSI.

### A. *Plain Meaning Rule*

Defendant argues that the legislative history of Section 841,[3] and the commentary to Section 2D1.1 of the Sentencing Guidelines,[4] make clear Congress' intention that the harsher penalties imposed by those sections specifically targeted "crack." Although these sources indicate that Congress was focusing on "crack" when it proposed and later passed the statutes in question, there are a number of difficulties with construing these provisions so narrowly. To begin, both provisions clearly use

---

instant case, the amount of "cocaine base" involved was 10 kilograms.

**3.** *See United States v. Shaw,* 936 F.2d 412, 416 (9th Cir.1991), discussing the legislative history of Section 841(b):

Representative Frank Annunzio explained, "Today we are seeing a new impetus to cocaine generated by the so-called 'crack,' which is smoked rather than snorted. It is relatively inexpensive and highly dangerous." 132 Cong.Rec. H[6519–01] (daily ed. Sept. 10, 1986). Similarly, Senator Chic Hecht urged support for S. 2878:

I wish to point out to my colleagues that the escalation of drug abuse is shown not only by

the number of this scourge's victims, but may also be measured in the potency and availability of today's illicit drugs. The purified form of cocaine known as "crack," for example, has lead to a number of drug-related deaths. *Id.* at S[13741–01] (Sept. 26, 1986).

*Shaw,* 936 F.2d at 416. *See also* 132 Cong.Rec. S8091–06 (June 20, 1986) (statement of Sen. D'Amato) ("Crack—or rock, as it is known—is smokeable freebase cocaine.... This bill creates, for the very first time, a special penalty applicable to crack.").

**4.** *See* U.S.S.G. § 2D1.1, Commentary, n. 10, Drug Equivalency Tables ("1 gm Cocaine Base ('Crack') = 100 gm of cocaine/20 gm of heroin").

the term "cocaine base," raising a strong inference that Congress meant something more than just "crack," since Congress could easily have said "crack," or could have simply listed substance names, if it so desired. *See Rickard v. Auto Publisher, Inc.*, 735 F.2d 450, 454 (11th Cir.1984) ("[A]s an elementary principle of statutory construction, a reviewing court must accord primacy to the plain meaning of the language Congress has enacted.").

 Only where the statutory language chosen is ambiguous should a court look beyond the plain meaning. *Id.* at 455. Defendant here accordingly argues that "cocaine base" is in fact ambiguous. We disagree. At the sentencing hearing, both Dr. Roach (the defense expert) and Mr. Santos (the Government's expert) substantially agreed as to the definition of the term "cocaine base," which label, both agreed, applied to the substance involved here. According to the expert testimony, "cocaine base" is, in summary, a rock-like (or "chunky") substance, not water soluble, which can be smoked in its existing form. In addition, it has a lower melting point than cocaine hydrochloride, and possesses the same chemical formula as crack. *See supra.* On this factual record, then, we are hard-pressed to conclude that the term "cocaine base" is ambiguous. Rather, we find that term to be sufficiently well-defined within the scientific community. Furthermore, as discussed *infra,* courts have consistently defined "cocaine base" as, *inter alia,* "not water soluble, concentrated in hard rock-like form, and generally smoked." *See, e.g., United States v. Barnes,* 890 F.2d 545, 552 (1st Cir.), *cert. denied,* 494 U.S. 1019, 110 S.Ct. 1326, 108 L.Ed.2d 501 (1989). And since we observe that "[o]ne reliable *indicium* of the clarity of Congress' language is consistent judicial interpretation of the provision in question," *Rickard,* 735 F.2d at 455, we conclude that the term "cocaine base" is not ambiguous.

 But even if we were to find ambiguity in the term "cocaine base," Defendant would still not prevail. At the outset, it is worth observing that

we must heed the ... well-settled doctrine ... to read a statute, assuming that it is susceptible of either of two opposed interpretations, in the manner which effectuates rather than frustrates the major purpose of the legislative draftsmen. *Shapiro v. United States,* 335 U.S. 1, 31, 68 S.Ct. 1375, 1391, 92 L.Ed. 1787 (1948). Defendant cites to the Congressional Record, in which Senator D'Amato, Senator Hecht, and Representative Annunzio all referred to "crack" while discussing Section 841, and to the commentary to Section 2D1.1, which seemingly equates "cocaine base" and "crack." *See supra* notes 3–4. While Defendant is indeed correct that the legislative history and statutory commentary both make frequent reference to "crack," neither goes so far as to limit the statutes' applications to solely "crack." To the contrary, the very statements cited by Defendant demonstrate that Congress was concerned with the addictive "scourge" of a "smokeable freebase cocaine" that is "smoked rather than snorted." *See supra* note 3 (statements of Sen. Hecht, Sen. D'Amato, and Rep. Annunzio). Here, both experts testified that the substance here was readily "smokable," and that both its effect on the user and chemical make-up were identical to that of "crack." We think it clear, then, that Congress intended the provisions of Sections 841 and 2D1.1 to apply to rock-like, smokable substances which are identical to "crack" in composition and effect, but which differ only slightly in physical appearance. And coupled with Congress' plain choice of language, we have little difficulty concluding that the substance here is punishable as "cocaine base."

B. *Case Authority*

In further support of his position, Defendant points to a number of opinions that, according to Defendant, have concluded that "crack" is "cocaine base." The difficulty with the cases cited is that none have said that "cocaine base" is *only* "crack;" rather, these authorities have simply held that "crack" is a *type* of "base." *See United States v. Shaw,* 936 F.2d 412, 415–16 (9th Cir.1991) ("[T]he term cocaine base

excludes cocaine hydrochloride ... [but] *encompasses* 'crack'.... [T]he Commission must have intended the term 'cocaine base' to *include* 'crack.'"); *United States v. Pinto*, 905 F.2d 47, 49 (4th Cir.1990) ("'cocaine base' *includes* the substance crack"); *United States v. Van Hawkins*, 899 F.2d 852, 854 n. 2 (9th Cir.1990) ("The term cocaine base *encompasses* 'crack.'"); *United States v. Metcalf*, 898 F.2d 43, 46–47 (5th Cir.1990) ("[C]rack cocaine is *one type* of cocaine base ... [and] is *a form of* cocaine base."); *United States v. Brown*, 859 F.2d 974, 976 (D.C.Cir.1988) ("*whatever else section 841(b)(1)(B)(iii) encompasses, it certainly includes [crack]*") (per curiam) (emphases added). Clearly, these decisions leave open whether substances other than "crack" may be considered "cocaine base."

In this regard, a number of courts have in fact defined "cocaine base" without limiting the definition solely to "crack." For example, the United States Court of Appeals for the Sixth Circuit has observed that

> [c]ocaine base is *not water soluble*, is concentrated in *rock-hard* forms of various sizes, and is generally *smoked*.... Thus, the phrase cocaine base defines a substance that is distinguishable from other forms of cocaine based upon *appearance, texture, price, means of consumption, the character and immediacy of the effects of use, and chemical composition*.... [T]he Constitution does not require th[e] statute to be drafted with absolute scientific precision.

*United States v. Levy*, 904 F.2d 1026, 1033 (6th Cir.1990) (citations omitted) (emphasis added), *cert. denied sub nom., Black v. United States*, — U.S. —, 111 S.Ct. 974, 112 L.Ed.2d 1060 (1991). *See also United States v. Griffin*, 945 F.2d 378, 381 (11th Cir.1991) ("'Crack,' or cocaine in free base form, is a solid, rock-like substance, whereas the term 'cocaine' generally refers to the powder form, which contains hydrochloric acid."); *Shaw*, 936 F.2d at 415–16 ("[C]o-

caine base' is ... distinguishable from 'cocaine' based on its different functions and effects," namely that base is generally very pure, intended for smoking, and in rock form.); *United States v. Thomas*, 932 F.2d 1085, 1090 (5th Cir.) ("Cocaine base is a different drug from cocaine ... [in part] because it is prepared for inhalation....") (citation omitted), *cert. denied*, — U.S. —, 112 S.Ct. 887, 116 L.Ed.2d 791 (1992); *Van Hawkins*, 899 F.2d at 854 ("[T]he term 'cocaine base' does establish sufficient guidelines for law enforcement ... [since it] excludes some forms of cocaine (cocaine salts) and therefore performs some limiting function." (citing *Brown*, 859 F.2d at 975–76)); *Barnes*, 890 F.2d at 552 ("Cocaine base is not water soluble, concentrated in hard rock-like form, and generally smoked."). In the instant case, the lab analyst characterized the substance as 76% pure, not water soluble, smokable, and in a "chunky" form. Thus, under both the accepted scientific and legal definitions, the substance here can fairly be defined as "cocaine base."

Defendant also points to an opinion by United States District Judge Kenneth L. Ryskamp, *United States v. Vistoli–Ferroni*, 783 F.Supp. 1366 (S.D.Fla.1991), in which Judge Ryskamp held that a liquid cocaine base (not crack) was not "cocaine base" within the meaning of Section 841. That opinion itself, however, acknowledged that "*crack is actually only one variety of cocaine base.*" *Id.* at 1367 (emphasis added). Notably, unlike the substance in the instant case, the substance at issue there was in liquid form (as opposed to rock form), and could not be smoked without further processing. *Id.* at 1367–1368. Judge Ryskamp held that, on the facts as presented in that case, the substance could not be characterized as either "crack" or "cocaine base." Significantly, Judge Ryskamp did *not* hold that "base" means only "crack."[5] The substance at issue here, in

---

**5.** In another recent case, *United States v. Rodriguez*, No. 90–632–CR (S.D.Fla. Apr. 12, 1991), United States District Judge James Lawrence King imposed a sentence under the cocaine base provision of section 841, since the substance

there could be used "in its present form without changing it [and could] be smoked or used or whatever...." *See* Transcript of Sentencing, at 17.

contrast, clearly falls within the accepted definition of "cocaine base."

Finally, Defendant cites to an Eleventh Circuit case which observed that "those concerned with the relevant legislation understood cocaine base to refer to crack and intended to enhance penalties for crack dealers," *see United States v. Williams,* 876 F.2d 1521, 1525 (11th Cir.1989), for the proposition that "cocaine base" is only "crack." We disagree with Defendant's reading of *Williams.* First, this Court has already rejected the argument that the drafters of the relevant statutes intended to limit their application only to "crack." Second, the issue in *Williams* was whether the defendant's sentence under the "base" statute for possession of "crack" was invalid because the statute was unconstitutionally vague. In other words, the defendant argued that "cocaine base" was not precisely defined, and in any event, did not include "crack." The Court held, however, that "crack" was included in the definition of "base;" and that there were sufficient means of distinguishing "base" from ordinary cocaine hydrochloride. Significantly, the Eleventh Circuit cited favorably to

*United States v. Brown,* 859 F.2d 974 (D.C.Cir.1988) (per curiam); and *Brown* expressly left open the possibility that substances other than "crack" could be considered to be "cocaine base," concluding that *"whatever else section 841(b)(1)(B)(iii) encompasses,* it certainly includes [crack]." *Brown,* 859 F.2d at 976 (emphasis added). Thus, *Williams* does not hold that "base" is only "crack," but instead holds merely that "crack" is a form of "base."

Therefore, for the foregoing reasons, the substance here must be considered "cocaine base" for purposes of 21 U.S.C. § 841 and Section 2D1.1 of the Sentencing Guidelines. Accordingly, it is

ORDERED AND ADJUDGED that Defendant's Objections to the Presentence Investigation Report are rejected.

DONE AND ORDERED.