974 F.2d 1340
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Randy C. BLOUNT, Defendant-Appellant.
 No. 92-1438.
 United States Court of Appeals, Seventh Circuit.
 Argued Aug. 4, 1992.
Decided Aug. 20, 1992.
 
 Before CUDAHY and FLAUM, Circuit Judges, and ESCHBACH, Senior Circuit Judge.
 
 ORDER
 
 1
 Randy C. Blount was arrested after a codefendant attempted to sell six ounces of crack cocaine to an undercover police officer. He was indicted on four counts: conspiracy to distribute cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 846; distribution of cocaine base in violation of 21 U.S.C. § 841(a)(1); possession of a firearm during a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1); and possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). A jury convicted him of all four counts. On appeal, he argues that the district court erred in denying his motion for judgment of acquittal[1] on the charges of conspiracy, distribution, and possession of a firearm during a drug trafficking offense. He also attacks his sentence on the ground that 21 U.S.C. § 841(a)(1) is void for vagueness since it does not contain an explicit definition of "cocaine base." Consequently, he asserts, the more severe sentence he received under the Sentencing Guidelines for crimes involving cocaine base as opposed to cocaine is invalid.
 
 I. Background
 
 2
 In the fall of 1991, the Metropolitan Enforcement Group of Southwestern Illinois (MEGSI) began to investigate a suspected cocaine dealer, Gregory Flowers. Acting undercover, Special Agent Leland Cherry of MEGSI made two controlled purchases of crack cocaine from Flowers in September 1991. A third purchase of six ounces of crack cocaine was arranged for October 10, 1991. After a pre-established signal from Agent Cherry, law enforcement personnel monitoring the buy from nearby were to move in and arrest Flowers.
 
 
 3
 When Flowers arrived for the deal, he was accompanied by Randy Blount. Blount had not been present during any of the previous purchases from Flowers, and his identity was then unknown to MEGSI. Nonetheless, based on their experience as law enforcement officers, Agent Cherry and other members of the surveillance team had anticipated that Flowers may bring other individuals with him due to the large amount of drugs involved. Blount remained in Flowers' car while Flowers entered Agent Cherry's vehicle. In response to Agent Cherry's questions about Blount's presence, Flowers indicated that Blount was present to protect the interests of the supplier of the drugs. Immediately after Flowers delivered the six ounces of crack cocaine, both Flowers and Blount were arrested. During a search of Flowers' car, a fully-loaded Ruger semi-automatic pistol was discovered beneath the seat in which Blount had been sitting.
 
 
 4
 At State Police headquarters, Blount was advised of his Miranda rights, responded to questions, and signed a voluntary statement regarding his role in the sale of the crack cocaine. He told the officers present that he knew he and Flowers were going to meet someone to sell drugs. His written statement explains that he had come to Illinois from Missouri the previous day to borrow money from his cousin. At his cousin's request, he accompanied Flowers. While in the car, Flowers took a package of drugs from his pocket and instructed Blount to wrap the drugs in a paper towel and place the package in a blue and white box inside the car. Blount did so. When they arrived for the meeting with Agent Cherry, Flowers gave him a gun to hold which Blount then placed under his seat in the car.
 
 
 5
 At trial, Blount testified that he had never seen Flowers prior to the day of the arrest. He stated that although he was not certain, he had an "idea" during their car ride together that Flowers may be carrying drugs. He testified that he did not know that Flowers was delivering drugs or picking up money for any drugs, and that he was not present to protect Flowers.
 
 
 6
 At the close of the evidence, Blount made a motion for judgment of acquittal on all counts which was denied. The jury returned a verdict of guilty on all charges. At the sentencing hearing, the district court determined that Blount was involved in the distribution of 150.3 grams of cocaine base. Under 21 U.S.C. § 841(a)(1) and U.S.S.G. § 2D1.1(c), the penalties for crimes involving cocaine base are significantly higher than those for offenses dealing with simple cocaine. The district court sentenced Blount under the Sentencing Guidelines to a total of 270 months' imprisonment.
 
 II. Analysis
 A. Motion for Judgment of Acquittal
 
 7
 In reviewing a district court's denial of a motion for judgment of acquittal: " '[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. Gill, 909 F.2d 274, 277 (7th Cir.1990) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). We believe the evidence supports the district court's ruling.
 
 1. Conspiracy to Distribute
 
 8
 In order to prove a charge of conspiracy under 21 U.S.C. § 846, the government need only establish that Blount entered into an agreement with the intent to distribute cocaine base. United States v. Simone, 931 F.2d 1186, 1200 (7th Cir.), cert. denied, 112 S.Ct. 584 (1991); see United States v. Sassi, No. 92-1258, 1992 U.S.App. LEXIS 14995 at * 6 (7th Cir. June 30, 1992) (proof of overt act not required under § 846). Although there was no direct evidence of an agreement, the government was entitled to rely on circumstantial evidence to prove the existence of the agreement. United States v. Ruiz, 932 F.2d 1174, 1179 (7th Cir.), cert. denied, 112 S.Ct. 151 (1991).
 
 
 9
 Contrary to Blount's assertion, this is not a case where the only evidence linking him to the offense is his presence at the scene. At Flowers' direction, Blount wrapped the packets of crack cocaine and placed them in a box. At the time of his arrest, there was a fully-loaded gun beneath his seat which he admitted he received from Flowers. Flowers indicated to Agent Cherry that Blount was present for security reasons. Law enforcement officers involved in the arrest testified that it is common for a drug dealer to bring one or more persons for assistance in a large drug transaction. The jury was entitled to reject Blount's claim of ignorance of any conspiracy. At trial, Blount admitted that he suspected that Flowers was involved with drugs. He may not now "escape criminal liability by pleading ignorance if he knows or strongly suspects he is involved in criminal dealings but deliberately avoids learning more exact information about the nature or extent of those dealings." United States v. Rodriguez, 929 F.2d 1224, 1227 (7th Cir.1991). Moreover, in response to questioning immediately after his arrest, he said that he knew he and Flowers were meeting someone to exchange drugs. There was sufficient evidence presented at trial for a rational jury to infer that Blount was a party to an agreement to distribute cocaine base.
 
 2. Distribution
 
 10
 The same evidence supports the distribution charge. Co-conspirators are liable for the actions of their accomplices. United States v. Townsend, 924 F.2d 1385, 1388 (7th Cir.1991) (citing Pinkerton v. United States, 328 U.S. 640, 647 (1946)). Even though Blount did not hand the drugs to Agent Cherry himself, the distribution by Flowers can be attributed to Blount as a co-conspirator.
 
 
 11
 3. Using or Carrying a Firearm in Connection with a Drug-Trafficking Offense
 
 
 12
 To support a conviction under 18 U.S.C. § 924(c)(1), the government need only show that a defendant "possessed or had control of a firearm during the commission of the underlying crime, and that the circumstances of the case show that the firearm facilitated or had a role in the crime." United States v. Bafia, 949 F.2d 1465, 1475 (7th Cir.1991) (citations and quotations omitted). Blount contends that there is insufficient evidence to show that he used the firearm found beneath his seat, or that it had any role in the offenses.
 
 
 13
 The term "using" is defined broadly under the case law. A violation of section 924(c)(1) may occur despite the fact the defendant has not brandished or fired the gun during the underlying offense. See United States v. Ocampo, 890 F.2d 1363, 1371 (7th Cir.1989). "Using" includes possession of a firearm which in any way facilitates the commission of a drug related crime. Id. at 1371. A firearm may facilitate the crime by providing the participants with security and the confidence necessary to complete the drug transaction. United States v. Wilson, 938 F.2d 785, 791 (7th Cir.1991), cert. denied, 112 S.Ct. 946 (1992). This Court has found that a defendant intended to use a gun in facilitation of a narcotics offense when the firearm was strategically located to be readily accessible for use during the narcotics transaction. See, e.g., id.; United States v. Whitley, 905 F.2d 163, 166 (7th Cir.1990). The pistol beneath Blount's seat was located in precisely such a position. Blount admits that he placed it there himself. He knew where it was located and had control over it, the gun was loaded, and it was quickly and easily available for any unexpected problems that might arise during the transaction. There was sufficient evidence for a rational trier of fact to conclude that Blount used the gun in connection with a drug trafficking offense.
 
 B. Void for Vagueness
 
 14
 For the first time on appeal, Blount argues that 21 U.S.C. § 841(a)(1) is void for vagueness since the statute does not explicitly define "cocaine base." As a result, he contends, the district court erred in applying to him the more severe penalties for offenses involving cocaine base under U.S.S.G. § 2D1.1(a)(3) as opposed to those involving simple cocaine. In most instances, a defendant's failure to raise an argument before the district court waives the issue on appeal. However, the government has not raised the defense of waiver, so we will address this issue on the merits. See Garlington v. O'Leary, 879 F.2d 277, 282-83 (7th Cir.1989) (discussing waiver of waiver). Blount cannot demonstrate that the statute is void for vagueness.
 
 
 15
 In order to survive a void for vagueness challenge, "a penal statute [must] define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Kolender v. Lawson, 461 U.S. 352, 357 (1983). The statute must contain minimum guidelines to regulate the discretion of law enforcement personnel. United States v. Antzoulatos, 962 F.2d 720, 726 (7th Cir.1992). A vagueness challenge to a statute that does not concern First Amendment rights is evaluated with reference to the facts of the case at bar. Id. The burden is on the defendant to show that the statute is unconstitutionally vague as applied to him. United States v. Cherry, 938 F.2d 748, 754 (7th Cir.1991).
 
 
 16
 It is true that neither the statute nor the Sentencing Guidelines contains a definition of "cocaine base," and that the circuit courts are not in total agreement on the identifying characteristics. Compare United States v. Lopez-Gil, 965 F.2d 1124, 1134-1135 (1st Cir.1992) with United States v. Shaw, 936 F.2d 412, 416 (9th Cir.1991). These facts alone, however, do not demonstrate that 21 U.S.C. § 841(c)(1) is unconstitutionally vague as applied to Blount. Even those circuits that disagree on the finer aspects of the definition of cocaine base, are unanimous in finding that the term includes "crack." See, e.g., United States v. Jackson, 968 F.2d 158, 162 (2d Cir.1992); Lopez-Gil, 965 F.2d 1124, 1134-1135; Shaw, 936 F.2d at 416; United States v. Levy, 904 F.2d 1026, 1033 (6th Cir.1990), cert. denied, 111 S.Ct. 974 (1991); United States v. Williams, 876 F.2d 1521, 1525 (11th Cir.1989); United States v. Brown, 859 F.2d 974, 976 (D.C.Cir.1988). See also U.S.S.G. § 2D1.1 Application Note 10, "Drug Equivalency Table: Cocaine and Other Schedule I and II Stimulants" which states "1 gm of Cocaine Base ('Crack') = 20 kg of marijuana." In the case at bar, there is no dispute as to the identity of the substance involved. The indictment charged Blount with conspiracy to distribute and distribution of "cocaine base (commonly known as 'crack')." The uncontradicted testimony of Sanford Angelos, a forensic chemist, was that the substance involved was "150.3 grams of cocaine base at a strength of 81 percent." (Trial Tr. at 99). Upon further questioning, Angelos stated that cocaine base is "commonly referred to as crack." Id. The defendant made no objection to this characterization at trial. Since the statute clearly applies to his conduct, he cannot establish that the statute is void for vagueness in his case. Parker v. Levy, 417 U.S. 733, 756 (1974); Brown, 859 F.2d at 976.
 
 III. Conclusion
 
 17
 There was sufficient evidence presented at trial for a rational trier of fact to find Blount guilty beyond a reasonable doubt of the narcotics offenses. With respect to the constitutionality of 21 U.S.C. § 841(a)(1), the case law is clear that the statute encompasses crack within the definition of cocaine base. Therefore, the statute is not unconstitutionally vague as applied to Blount. The judgment of conviction and sentence are
 
 
 18
 AFFIRMED.
 
 
 
 [1]
 In the district court and in his brief, Blount characterizes this motion as a directed verdict. However, the term "directed verdict" has been abolished from the Federal Rules of Criminal Procedure. The correct term is "motion for judgment of acquittal," so we shall employ this term throughout the order. See Fed.R.Crim.P. 29