**UNITED STATES of America, Plaintiff,**

v.

**Johnny PATILLO, Defendant.**

**No. CR 92–0076 JSL.**

United States District Court,
C.D. California.

March 23, 1993.

**840**

Christopher M.E. Painter, Asst. U.S. Atty., Los Angeles, CA, for plaintiff.

Milton C. Grimes, Santa Ana Heights, CA, for defendant Johnny F. Patillo.

## SENTENCING OPINION

LETTS, District Judge.

On April 14, 1992, the defendant Johnny Patillo pled guilty to a single count indictment that charged him with possession with intent to distribute approximately 680.7 grams of crack cocaine. 21 U.S.C. § 841(a)(1) (1988 and Supp. III 1991). On December 18, 1992, the court sentenced defendant, after orally making findings that it was compelled to impose a mandatory minimum sentence of ten years under 21 U.S.C. § 841(b)(1)(A) (1988 and Supp. III 1991). The Sentencing Guidelines called for a sentence of between 151 and 188 months (twelve years seven months to fifteen years), a range from which the court found departure appropriate. The court indicated that written findings would follow, which are set forth below.

## I. MINIMUM SENTENCE

■ At least at the outset, this sentencing appeared to place me in the position of making the most difficult choice I have yet faced, between my judicial oath of office, which requires me to uphold the law as I understand it, and my conscience, which requires me to avoid intentional injustice. When I took defendant's plea of guilty in this case, he seemed to me to be the clearest possible example of everything that is wrong with guideline sentencing and statutorily imposed mandatory minimum sentences.

On January 16, 1992, defendant, a twenty-seven year old African–American man, brought a package containing approximately 681 grams of crack cocaine to a Federal Express office in Los Angeles and attempted to send the package to Dallas, Texas. According to defendant, he had never previously been involved in trafficking drugs, but had accepted a neighbor's offer of $500 to put the package in the mail. At the time, he was subject to extraordinary financial pressures, due to an accumulation of debt for student loans, credit cards, phone bills and rent. Defendant admits knowing that the package contained illegal drugs, but has steadfastly denied prior knowledge of the type of drug, or the amount of the drug the package contained. As far as the court can determine, defendant had never before been involved in any criminal activity. He had obtained a college education and held a steady job up until the time he was incarcerated.

The government's position is that the court cannot legally impose a sentence of less than ten years in this case, and it is correct. The ten year minimum is specifically mandated by a statute, 21 U.S.C. § 841(b)(1)(A), which has been upheld as constitutional by the Ninth Circuit Court of Appeals in decisions that bind this court. The court postponed sentencing several times in the hope of finding some reasoned basis for holding that precedent does not bind the court. This, however, has proved impossible. Defendant has argued that the mandatory minimum is unconstitutionally vague, that it is racially discriminatory, and that it violates due process and the Eighth Amendment. Ninth Circuit precedent rejects these arguments, and instead compels this court to apply the mandatory minimum. *See United States v. Shaw,* 936 F.2d 412, 416 (9th Cir.1991) (Section 841(b) is not unconstitutionally vague for failing to define "cocaine base"); *United States v. Van Hawkins,* 899 F.2d 852, 854 (9th Cir.1990) (same)[1]; *United States v. Harding,* 971 F.2d 410, 413 (9th Cir.1992) (Section 841(b)'s distinction between cocaine base and cocaine does not violate equal protection), *cert. denied,* —— U.S. ——, 113 S.Ct. 1025, 122 L.Ed.2d 170 (1993); *United States v. Hoyt,* 879 F.2d 505, 512–14 (9th Cir.) (ten year mandatory minimum for first time offenders required by 21 U.S.C. § 841(b)(1)(A) does not violate the Eighth Amendment's protection against cruel and unusual punishment or the Fifth Amendment's equal protec-

tion and due process guarantees), *mod. on other grounds,* 888 F.2d 1257 (9th Cir.1989); *United States v. Savinovich,* 845 F.2d 834, 838–39 (9th Cir.), *cert. denied,* 488 U.S. 943, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988). *See also Chapman v. United States,* —— U.S. ——, ——, 111 S.Ct. 1919, 1928, 114 L.Ed.2d 524 (1991) (upheld mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(B) despite the fact that the weight of paper upon which LSD is carried is factored into the determination of the quantity which triggers the mandatory sentence).

I, however, will no longer apply this law without protest, and with no hope for change.

Statutory mandatory minimum sentences create injustice because the sentence is determined without looking at the particular defendant.[2] Under 21 U.S.C. § 841(b)(1)(A), the mandatory minimum sentence is triggered by two factors only: (1) the type of drug and (2) the amount of drug. In this case, it is the fact that the package defendant brought to Federal Express contained 681 grams of crack cocaine which raises this offense to one in which the *minimum* sentence is ten years, *without possibility of parole.* If the package contained a different narcotic, or a lesser quantity of the same substance, defendant might have been sentenced to straight probation.

By agreement with the government, defendant's plea of guilty in this case rested upon

---

**1.** This court is bound by Ninth Circuit precedent which holds that Section 841(b)(1) is not unconstitutionally vague for failing to define cocaine base; this court finds however that this line of cases is not immune from attack. In *Shaw,* for example, the Ninth Circuit, interpreting 21 U.S.C. § 841(b), defined "cocaine base" to include " 'crack' or 'rock cocaine,' " which it understood "to mean cocaine that can be smoked, unlike cocaine hydrochloride"; the court expressly rejected a chemical definition of "cocaine base." 936 F.2d at 416.

In *United States v. Jackson,* 968 F.2d 158, 161, 163 (2d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 664, 121 L.Ed.2d 589 (1992), the Second Circuit, interpreting the same statute, in contrast, held that " 'cocaine base' clearly is a scientific term ... which should be defined by reference to the scientific community from which it derives." The Second Circuit criticized the *Shaw* court's rejection of a scientific definition of "cocaine base," but concluded that the term was not un-

constitutionally vague. The Second Circuit noted that "[j]ust because other courts of appeals differ in their definitions of a term does not mean that the term is void for vagueness." *Id.* at 163. This court finds it alarming that the term "cocaine base" is not unconstitutionally vague when even trained jurists cannot agree on its meaning.

**2.** Other sentencing judges have similarly criticized the injustice they are forced to mete out in sentencing through the imposition of mandatory minimum sentences. The Honorable Jack Weinstein, for example, recently stated,

> Injustice sometimes results from the rigid operation of the high mandatory minimum sentences contained in the federal drug laws. Until Congress reconsiders its minimum sentence policy—or the United States Attorney exercises a compassionate judgment—the court has no power to consider the injustice of minimum terms in individual cases. *United States v. Gaviria,* 804 F.Supp. 476, 480 (E.D.N.Y.1992).

his admission that he delivered a package to Federal Express which contained approximately 681 grams of cocaine base, and that at the time he made the delivery, he knew that the package contained an illegal substance. That is all his plea of guilty entailed. Defendant did not admit to knowing that the substance in the envelope was cocaine base, or to knowing that the package contained 681 grams of crack. In fact, he expressly denied any such knowledge.

Admittedly, the pre-sentence report ("PSR") filed by the Probation Office contains information which might cause one to speculate that defendant may have had a somewhat greater involvement in the business of drug trafficking than he has admitted. Any such information, however, is purely circumstantial. This court cannot form a reasoned conclusion based upon this information, and the government has made no effort to develop it. It has not been developed further because defendant's role in the business of drug trafficking is almost entirely irrelevant for sentencing purposes. The court considered information regarding the defendant's role in drug trafficking, but as explained below, only as a basis for departure.

The minimum ten year sentence to be served by defendant was determined by Congress before he ever committed a criminal act. Congress decided to hit the problem of drugs, as they saw it, with a sledgehammer, making no allowance for the circumstances of any particular case. Under this sledgehammer approach, it can make no difference whether defendant actually owned the drugs with which he was caught, or whether, at a time when he had an immediate need for cash, he was slickered into taking the risk of being caught with someone else's drugs. Under the statutory minimum, it can make

no difference whether he is a life time criminal or a first time offender. Indeed, under this sledgehammer approach, it could make no difference if the day before making this one slip in an otherwise unblemished life, defendant had rescued fifteen children from a burning building, or had won the Congressional Medal Of Honor while defending his country.

I do not advocate giving up the attempt to rid our society from the evils of drug use. Drug crimes are not "victimless crimes," and it would be naive to suggest otherwise. Drug users use more than their share of many social benefits, and therefore victimize everyone who must pay for them. The need for money with which to buy drugs is the most frequent reason for committing crimes given by defendants convicted in this court. These crimes have victims. Drug users also have children, who suffer the effects of their parents' drug use.

I have no great difficulty imposing lengthy prison sentences upon proven high-volume drug merchants, and others proven to be high in the chain of drug distribution.[3] In some cases I would have imposed the same sentence in the exercise of pure discretion, not governed by any guideline. If, for example, defendant had admitted that he knew what was in the package he delivered to Federal Express, or if the government had been required to prove it, this court could sentence him as the government recommends, with a clear conscience, although still not without misgivings.

■ Since the days when amputation of the offending hand was routinely used as the punishment for stealing a loaf of bread, however, one of the basic precepts of criminal justice has been that the punishment fit the crime. This is the principle which, as a matter of law, I must violate in this case.[4]

---

3. Unfortunately, in this court's experience, those high in the chain of drug distribution are seldom caught, and seldom prosecuted.

4. The Eighth Amendment contains a constitutional requirement that sentences be proportionate to a defendant's crime. The Supreme Court, however, has interpreted this requirement narrowly; therefore defendant's sentence does not violate the Eighth Amendment's proportionality requirement. In *Harmelin v. Michigan,* —— U.S.

——, 111 S.Ct. 2680, 2705, 115 L.Ed.2d 836 (1991), the plurality held that the Eighth Amendment forbids sentences which are "grossly disproportionate" to the crime. Under this standard, it found however that a sentence of life imprisonment without parole for possessing more than 650 grams of cocaine did not violate the Eighth Amendment. —— U.S. at ——, 111 S.Ct. at 2709.

Defendant could have been prosecuted for this offense by the state, rather than the federal government. A review of the relevant California state criminal statute suggests that had that occurred most likely he would have been incarcerated for a period of between one and two years. *See* Cal.Health & Safety Code § 11351.5 (West 1993) (possession of cocaine base for sale punishable by a term of imprisonment of three, four or five years, with eligibility for parole after half-time served).[5] Surely there are those who would say that this would be too short a period for the owner of drugs for distribution. I cannot imagine, however, those who would argue that such a sentence would be inadequate for a first time offender who merely delivered a package to a Federal Express office, knowing that it contained illegal drugs, but not knowing what drugs or the quantity.

I, for one, do not understand how it came to be that the courts of this nation, which stood for centuries as the defenders of the rights of minorities against abuse at the hands of the majority, have so far abdicated their function that this defendant must serve a ten year sentence.[6]

No doubt there are civilized nations in which the penalty for crimes against the state, such as assassination and treason, are set in advance without reference to who does them and in what circumstances. There may even be some civilized nations in which the penalties for historic biblical offenses such as first degree murder are set in advance. It is hard to imagine, however, that there is any other country in western civilization in which a crime such as this one—simply picking up an unknown quantity of an unknown illegal substance—is treated as the legal equivalent of the conscious commission of a capital offense. It is hard to imagine that there is any other nation in which a convicted rapist with a long and unsavory history of prior misconduct can be sentenced by the judge who presides over his trial to a sentence which will make him eligible for parole in a less than three years,[7] while defendant, a first time offender with a spotless prior record,

---

**5.** Notably, in "unusual circumstances," a defendant such as Patillo, convicted on state charges of possession of 681 grams of cocaine base for sale could be sentenced to a term of probation, rather than imprisonment, "where the interests of justice would be best served." Cal.Penal Code § 1203.073(b)(5) (West 1993).

**6.** In upholding mandatory minimum sentences, the courts have instituted racial disparity in sentencing. Defendant was convicted on a crack cocaine charge, rather than a powder cocaine charge. A study of all drug offenders sentenced in federal court from April 1, 1992 to July 31, 1992 revealed that 92.6% of those sentenced for possession of crack cocaine were black, while 45% of those sentenced for powder cocaine were white. The Federal Public Defender in Los Angeles concluded twenty-three crack cases in 1991. All the defendants were black. Jim Newton, "Harsher Crack Sentences Criticized as Racial Inequity," *Los Angeles Times*, November 23, 1992, at A20.

Under the Guidelines, every gram of crack is considered the equivalent of one hundred grams of powder cocaine. A defendant convicted of selling fifty grams of crack must be sentenced to at least ten years in prison; to trigger the same minimum ten year sentence for a defendant convicted on powder cocaine charges, the defendant would have to have tried to sell five kilograms of cocaine.

As the courts have noted in upholding mandatory sentences under 21 U.S.C. § 841(b)(1), sound reasons exist for treating crack more severely than powder cocaine. *See e.g., United States v. Harding*, 971 F.2d 410, 413 (9th Cir. 1992) (Congress' decision to treat crack more severely than cocaine is based on its more profound physiological and psychological effects, including addictiveness, and the manner in which it is distributed), *cert. denied,* — U.S. ——, 113 S.Ct. 1025, 122 L.Ed.2d 170 (1993). However treating crack one hundred times more severely than cocaine, seems arbitrary at best, and disproportionately affects black defendants.

The arbitrary nature of the one hundred fold difference in the treatment of crack and cocaine may be seen in comparison to the treatment of methamphetamine and ice under the Guidelines. Methamphetamine, a powerful stimulant, can be converted into a smokable version called ice; smoking ice is more addictive and more dangerous than snorting methamphetamine for the same reason that smoking crack is more dangerous to users than snorting cocaine. However under the Guidelines, one gram of ice is treated as *ten* grams of methamphetamine, rather than one hundred grams. Ice dealers and methamphetamine dealers are almost exclusively white. The court can surmise no reason for treating crack one hundred times more seriously than powder cocaine, and treating ice only ten times more seriously than methamphetamine.

**7.** *See* Cal.Penal Code § 264 (West 1993) (rape is punishable by imprisonment for three, six or eight years).

stands to be sentenced by a Congress who has never seen him and never judged him to a minimum sentence of ten years, without the possibility of parole.

In my view a criminal justice system that does not require not only those who accuse a criminal, but also those who sentence him, to confront him and publicly acknowledge their acts as their own, to his face, is worse than uncivilized. It is barbaric.

## II. DEPARTURE FROM THE SENTENCING GUIDELINES

Having reluctantly determined that the mandatory minimum applies, the court departs down to the mandatory minimum sentence of ten years. The Guidelines dictate an offense level of 36 for the 681 grams of cocaine base possessed by defendant. Sentencing Guidelines (U.S.S.G.) § 2D1.1(a)(3). The pre-sentence report ("PSR") subtracted two points for acceptance of responsibility, resulting in an offense level of 34. Defendant has no criminal history, and therefore has a criminal history category of I; as noted above, the guideline range for sentencing is between 151 and 188 months incarceration and five years of supervised release.

The PSR did not identify any grounds for departure, although the Probation Officer recommended a sentence of 151 months, at the low end of the guideline range. The government requested that the court sentence defendant in accordance with the recommendation of the Probation Officer to a term of 151 months incarceration. Defendant maintained that a downward departure would serve justice.

Title 18 U.S.C. § 3553(b) allows a court to depart from the applicable guideline range where the court finds that "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." The court finds that defendant's crime presents several circumstances not adequately considered by the Commission.

### A. *Defendant is a minor player in the drug trade*

■ First, defendant's minor role in the overall drug trade is a mitigating factor which warrants downward departure to the mandatory minimum. In *United States v. Valdez–Gonzalez*, 957 F.2d 643, 650 (9th Cir. 1992), the Ninth Circuit affirmed the sentencing court's downward departure to account for the marginal roles defendants played in the drug trade. In that case, the defendants were Mexican nationals hired as day laborers to transport drugs across the border for one or two thousand dollars. The district court examined the socioeconomics and the internal politics of the drug trade along the Mexican border, and determined that the defendants were relatively blameless drug "mules," whose sentences should be mitigated to reflect their minimal roles. *Id.* at 649.

The *Valdez–Gonzalez* court noted that to a limited extent, the Guidelines provide for downward adjustments in sentencing based on a defendant's role in an offense; defendants who are minimal participants in criminal activity may have up to four points subtracted from their offense level. *See* U.S.S.G. § 3B1.2. The Ninth Circuit recognized however that this downward adjustment only took into account the defendant's role in the charged activity. Where a defendant is the sole participant in the crime with which he is charged, the adjustment does not apply. 957 F.2d at 648. Since the Commission did not adequately take into consideration the need to make distinctions in all sentencings between the relative culpabilities of defendants who are mere drug "mules" and those who run drug operations, the Ninth Circuit concluded that a downward departure was appropriate to account for "defendant's role in conduct extending beyond the offense of conviction." *Id.* at 649.

The rationale of *Valdez–Gonzalez* compels this court to depart downward in this case to take into consideration the fact that defendant is a minor player in the drug trade which the federal laws aim to curb. Certainly defendant is not completely blameless. Arguably he is less sympathetic than the Mexican "mules" in *Valdez–Gonzalez* in that

he had a steady job, is educated, and thus possibly was not subject to the same degree of socioeconomic pressures as Mexican couriers living in abject poverty on the border. On the other hand, defendant lived in a community where the opportunities to become involved in drug trafficking are rampant, and he was subject to tremendous financial responsibilities and other pressures that cannot be judged against those faced by a typical border "mule."

The Commission ignored the need for greater variations in sentencing to account for the vastly different culpabilities of the various players in the drug trade. Under the Guidelines, an owner of three tons (2500 kilograms) of cocaine would receive a sentence of thirty years in jail. Defendant, a first time offender, only minimally involved in the drug scheme, can receive up to fifteen years in jail under guideline sentencing. This court finds that the Commission could not have intentionally meant to create a mere two to one difference in the treatment of drug kingpins, who reap millions off the drug trade and destroy millions of people's lives, versus the treatment of low-level dealers, who themselves to a large extent have been victimized by the drug trade propagated by the kingpins.[8] In the interest of justice, the court must depart to account for defendant's lower culpability in the drug trade.

### B. Defendant's Crime was Aberrant Behavior

■ Second, this court finds that the aberrant nature of defendant's criminal act is another ground which justifies departure. In *United States v. Fairless*, 975 F.2d 664 (9th Cir.1992), the Ninth Circuit upheld a district court's departure based on defendant's aberrant act of armed robbery. Defendant committed his crime after a series of unfortunate circumstances in his life. He had lost his job, was under financial pressures, and was manic depressive; those who knew defendant described his crime as a "complete shock." *Id.* at 668. *See also United States v. Takai*, 941 F.2d 738, 744

(9th Cir.1991) (Ninth Circuit upheld departure for aberrant behavior when defendants' crime did not lead to pecuniary gain, a government agent influenced them to commit the crime, and one of the defendants performed charitable deeds); *United States v. Dickey*, 924 F.2d 836, 839 (9th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 383, 116 L.Ed.2d 334 (1991) (departure for aberrant behavior by defendant, who stole $80,000 which he received by bank error.)

Like the crime committed by defendant in *Fairless*, defendant's crime is an act of aberrant behavior. Defendant is surrounded by family and friends, who say that this is the first time defendant has been in any kind of trouble. The Probation Officer has described defendant's crime as "out of character." Defendant held a well-paid job, had a stable employment history, and only in a particular moment of financial weakness, committed this crime. Defendant had both unusual temptation and unusual opportunity to commit this crime—a crime for which he has demonstrated tremendous remorse. This court has confidence that if this defendant were not incarcerated, he would have learned enough from this criminal process not to make the same mistake again, and thus departs downward to the mandatory minimum.

### C. Departure is Necessary to Avoid Manifest Injustice

■ Finally the unique circumstances of this case qualify as a combination of factors warranting departure to the level of the mandatory minimum. A "unique combination of factors may constitute a 'circumstance' " that justifies downward departure. *United States v. Floyd*, 945 F.2d 1096, 1099 (9th Cir.1991), (quoting *United States v. Cook*, 938 F.2d 149, 153 (9th Cir.1991)). The two factors already identified by this court as warranting departure together are part of a complex of mitigating factors which make departure necessary to avoid manifest injustice.

An additional factor separately influences the court's decision to depart. Defendant

---

**8.** In reality, the Sentencing Commission's ability to create equity in sentencing among defendants with varying degrees of culpability is severely limited by the imposition of statutorily required mandatory minimum sentences on even those with minor roles in drug trafficking.

assisted his Probation Officer during the Los Angeles riots, in a way which speaks to his tremendous character, and which deserves award in sentencing. The government may move for departure below the mandatory minimum due to substantial assistance to authorities in the investigation or prosecution of another person who has committed an offense. U.S.S.G. § 5K1.1. In this case, defendant, an underling in the drug trade, does not appear to have been in a position to have identified the control persons in the chain of command in the drug trade. However, he provided substantial assistance to the authorities during the riots, ensuring the personal safety of the Probation Officer. The Guidelines do not adequately consider this type of assistance by defendants.

Whether this court is right that there are adequate grounds for departure from the Guidelines will be judged, as a matter of law, by judges of the Ninth Circuit. They will neither see defendant nor hear him, but they will decide his sentence. This is not to say or suggest, in any way, that any of the judges of the Ninth Circuit are unconscientious people, or are less sensitive to the problems of the "drug war" than the district court judges. The truth is to the contrary. But they are bound by their own decisions and those of the Supreme Court.

IT IS SO ORDERED.