UNITED STATES of America, Appellant,

v.

Frank JACKSON, Defendant–Appellee.

No. 1082, Docket 91–1664.

United States Court of Appeals,
Second Circuit.

Argued March 16, 1992.

Decided June 15, 1992.

Thomas McC. Souther, Asst. U.S. Atty., S.D.N.Y., New York City (Otto G. Obermaier, U.S. Atty., S.D.N.Y., Annmarie Levins, Asst. U.S. Atty., S.D.N.Y., New York City, of counsel), for appellant.

David B. Levitt, The Legal Aid Society, Federal Defender Services Appeals Unit, New York City, for defendant-appellee.

Before: MESKILL and PRATT, Circuit Judges, and NICKERSON,* District Judge.

MESKILL, Circuit Judge:

The government appeals from a decision entered in the United States District Court for the Southern District of New York, Lasker, J., declaring the enhanced penalty provisions of 21 U.S.C. § 841(b) and United States Sentencing Guidelines (Guidelines) § 2D1.1 void for vagueness because the provisions do not define the term "cocaine base." *United States v. Jackson*, 768 F.Supp. 97 (S.D.N.Y.1991). Those provisions impose substantially greater sentences for offenses involving cocaine base

---

* Honorable Eugene H. Nickerson, United States District Judge for the Eastern District of New York, sitting by designation.

than for offenses involving the same amount of cocaine. 21 U.S.C. § 841(b); Guidelines § 2D1.1.

Defendant-appellee Frank Jackson was convicted, upon a plea of guilty, of "possession with intent to distribute cocaine ('crack')" in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A) and 18 U.S.C. § 2. Because the district court determined that the enhanced penalty provisions were unconstitutionally vague, it sentenced Jackson to the lesser punishment that would have been proper if the substance involved in the offense had been cocaine.

## BACKGROUND

In May 1989 police officers stopped a car in which Jackson and co-defendant Frank Culmer were passengers. The police found a brown paper bag containing 300 grams of a substance the government identified as cocaine base or "crack" and 125 grams of a substance the government identified as cocaine. Jackson was charged with one count of unlawfully, intentionally and knowingly possessing with intent to distribute approximately 300 grams of mixtures and substances that contain a detectable amount of cocaine base in violation of 21 U.S.C. §§ 812, 841(a)(1), (b)(1)(A) and 18 U.S.C. § 2, and one count of unlawfully, intentionally and knowingly possessing with intent to distribute approximately 125 grams of mixtures and substances that contain a detectable amount of cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2. Jackson entered a plea of guilty on the first count of possession with intent to distribute cocaine base. The second count was dismissed.

At his plea allocution Jackson explained that Culmer had told him that Culmer could get some "crack" and promised that if Jackson accompanied him, Culmer would give Jackson a share of the proceeds from a drug sale. Judge Lasker specifically asked Jackson if Jackson knew that the substance in Culmer's possession was "crack." Jackson responded "yes."

Despite this plea, Jackson later professed not to know what type of drugs Culmer intended to purchase. In a letter to Judge Lasker in connection with his sentencing Jackson wrote that Culmer "never even told me what kind of drugs or how much he was going to get but I also figured it would be some types [sic] of cocaine."

After Jackson pleaded guilty, a report of the Drug Enforcement Administration (DEA) Laboratory, dated June 2, 1989, identified the alleged "crack" cocaine as cocaine base with a purity of 27 percent. On November 8, 1990, in response to the substance's low purity level, Jackson moved for either an order directing the government to produce samples of the substance alleged to be cocaine base or an order directing retesting by the government chemist and a precise description of the procedures used by the chemist. In an affidavit in support of the motion, defense expert Dr. Morris S. Zedeck explained why a retesting was necessary and described the test to be used. Judge Lasker responded to the motion by permitting Dr. Zedeck and another doctor to retest the alleged cocaine base.

After performing two tests on the sample Dr. Zedeck concluded that the substance was cocaine base. Because the substance was highly impure, however, he questioned whether the substance could have been used as "crack." Specifically Dr. Zedeck's conclusion was as follows:

Based on the GC/MS scans, the ion ratios, the solvents used to extract the pellets and the volumes of solvent employed, *the data indicate that the material was cocaine base.* There are several indications that this sample of "crack" is highly impure. First, the DEA calculated that the sample contained 27% cocaine. In our limited study to determine form of cocaine and not quantitation, using only a two point standard curve, our data are similar with those of the DEA; we found the sample to contain 22.7% cocaine. The form of the material being soft, sticky, oily and brownish indicates the presence of impurities. Pure cocaine would not have left an oily residue after ether extraction. Crack is supposed to be a whitish, dried, hard pellet. *It is*

*difficult to predict whether this material could have been used as crack.*

(emphasis added).

At sentencing Jackson contended that the provisions that punish cocaine base offenses more severely than offenses involving cocaine are unconstitutional because they are impermissibly vague with regard to what constitutes cocaine base.

The district court agreed with Jackson and held that the failure of the statute and Guidelines to define "cocaine base" rendered the enhanced penalty provisions unconstitutionally vague both on their face and as applied to Jackson's case. Troubling to the court was the failure of the courts of appeals to reach a consensus as to the meaning of "cocaine base." The court reasoned that the provisions were void for vagueness because "the substance in question may or may not be cocaine base depending upon which definition the chemist, the prosecutor or the court chooses to adopt." *Jackson*, 768 F.Supp. at 101.

Accordingly at sentencing Judge Lasker calculated Jackson's offense level based on possession of cocaine rather than possession of cocaine base. This resulted in a Guidelines range of 63 to 78 months. The judge sentenced Jackson to 63 months imprisonment followed by a three year term of conditional supervised release. The government brought this appeal in response to the court's ruling on the constitutionality of section 841(b) and Guidelines § 2D1.1 and its sentencing of Jackson.

## DISCUSSION

In 1986 Congress passed the Anti–Drug Abuse Act that, *inter alia*, amended 21 U.S.C. § 841(b)(1) to provide for enhanced penalties for possession with intent to distribute specified amounts of controlled substances. *See* P.L. 99–570, § 1002(2). As a result, section 841(b)(1) and the corresponding Guideline, § 2D1.1, impose a substantially greater penalty for possession with intent to distribute cocaine base than for possession with intent to distribute cocaine. The enhanced penalty provisions' failure to define "cocaine base" has generated numerous appeals. *See, e.g., United States v.*

*Shaw*, 936 F.2d 412, 413–16 (9th Cir.1991); *United States v. Thomas*, 932 F.2d 1085, 1090 (5th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 887, 116 L.Ed.2d 791 (1992); *United States v. Turner*, 928 F.2d 956, 959–60 (10th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 230, 116 L.Ed.2d 187 (1991); *United States v. Avant*, 907 F.2d 623, 624–27 (6th Cir.1990); *United States v. Pinto*, 905 F.2d 47, 49–50 (4th Cir.1990); *United States v. Williams*, 876 F.2d 1521, 1525 (11th Cir.1989); *United States v. Brown*, 859 F.2d 974, 975–77 (D.C.Cir.1988) (per curiam).

Section 841(b) imposes mandatory minimum prison terms for narcotics offenses that involve specified amounts of controlled substances. 21 U.S.C. § 841(b). For example, an individual convicted of possession with intent to distribute five kilograms of a mixture or substance containing a detectable amount of "cocaine, its salts, optical and geometric isomers, and salts of isomers" faces a minimum prison term of ten years, 21 U.S.C. § 841(b)(1)(A)(ii); for possession of 500 grams, the minimum prison term is five years, *id.* § 841(b)(1)(B)(ii). A much smaller amount of cocaine base is required to trigger the same penalties. Possession with intent to distribute merely fifty grams of "cocaine base" triggers the ten year mandatory minimum, *id.* § 841(b)(1)(A)(iii), while only five grams results in the mandatory minimum of five years, *id.* § 841(b)(1)(B)(iii).

Guidelines § 2D1.1 sets sentencing ranges for controlled substance offenses based on the sentences mandated by section 841(b), *see* Guidelines § 2D1.1, Application Note 10, and uses the same terminology as the statute.

The impact of differentiating between cocaine and cocaine base in Jackson's case is substantial. Jackson was convicted of possession with intent to distribute 300 grams of cocaine. If the substance is classified as "cocaine" the statute imposes no mandatory minimum and the Guidelines sentencing range under the applicable criminal history category of IV—before any reductions—is 63 to 78 months. If the substance is classified as "cocaine base" the statute imposes

a mandatory minimum of ten years and the Guidelines range is 210 to 262 months.[1]

A penal statute is not void for vagueness if it "define[s] the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983) (citations omitted); *accord United States v. McElroy*, 910 F.2d 1016, 1021 (2d Cir.1990). "[I]f arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2299, 33 L.Ed.2d 222 (1972) (footnotes omitted); *see also Kolender*, 461 U.S. at 358, 103 S.Ct. at 1858.

■ Vagueness challenges to statutes that do not involve First Amendment interests are examined in light of the facts of the case at hand. *Maynard v. Cartwright*, 486 U.S. 356, 361, 108 S.Ct. 1853, 1857, 100 L.Ed.2d 372 (1988); *United States v. Mazurie*, 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1975). Although the district court recognized this principle it ruled that the statutory and Guidelines provisions are unconstitutionally vague both on their face and as applied. Because this challenge does not implicate First Amendment freedoms the district court's conclusion that the provisions are facially invalid was erroneous and must be reversed.

■ We turn to the question whether the enhanced penalty provisions are void for vagueness as applied to the facts of this case. We are called on to decide whether a substance that has been identified as "cocaine base" by chemists but that may not be pure enough to be used as "crack" falls within the meaning of "cocaine base" under 21 U.S.C. § 841 and Guidelines § 2D1.1. We believe that it does.

"[W]here Congress has used technical words or terms of art, 'it [is] proper to explain them by reference to the art or science to which they [are] appropriate.'" *Corning Glass Works v. Brennan*, 417 U.S. 188, 201, 94 S.Ct. 2223, 2231, 41 L.Ed.2d 1 (1974) (citations omitted); *see also McDermott Int'l v. Wilander*, —— U.S. ——, 111 S.Ct. 807, 811, 112 L.Ed.2d 866 (1991) (absent contrary congressional indication when statute contains a term of art, court assumes Congress intended the term to have its established meaning).

"Cocaine base" clearly is a scientific term. The court had before it the transcript of the testimony of Dr. George Robert Schwartz, an expert chemist who testified at a sentencing proceeding in another case. *See generally United States v. Turner*, 928 F.2d 956 (10th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 230, 116 L.Ed.2d 187 (1991). Dr. Schwartz stated that the meaning of the base form of cocaine is undisputed in the scientific community. He defined the term as "a substance which when combined with an acid produces a salt." According to Dr. Schwartz, the chemical formula for cocaine base is $C_{17}H_{21}NO_4$; the formula for cocaine hydrochloride—a chemical term for cocaine—is $C_{17}H_{21}NO_4HCl$. He explained that the two forms have different solubility levels, different melting points and different molecular weights. Dr. Schwartz concluded that "just about any chemical laboratory would be able to distinguish the difference between cocaine base and cocaine salt or other forms."

---

1. We are confused by the district court's calculation of Jackson's sentence for possession with intent to distribute cocaine. The presentence report recommended a reduction of two levels for acceptance of responsibility. The government did not oppose this reduction. The court in calculating the sentencing range for cocaine base had indicated a willingness to reduce the sentence by two levels for a base offense level of 32. When the court determined that Jackson would be sentenced for possession of cocaine it made no reduction for acceptance of responsibility. To our knowledge no one has objected to the court's failure to consider the reduction nor has the issue been raised on appeal.

Therefore, according to expert testimony, "cocaine base" has a precise definition in the scientific community. The differences between cocaine base and cocaine are well enough defined to prevent arbitrary enforcement of the enhanced penalty provisions.

■ We decline to equate cocaine base with "crack" cocaine. It is apparent that Congress in imposing the enhanced penalties was concerned with the scourge of "crack." While we believe that Congress contemplated that "cocaine base" would include cocaine in the form commonly referred to as "crack" or "rock" cocaine, Congress neither limited the term to that form in the plain language of the statute nor demonstrated an intent to do so in the statute's legislative history. Congress used the chemical term "cocaine base" without explanation or limitation.

The First Circuit has recently accepted an expert chemist's determination that a substance was cocaine base on facts similar to those before us. In *United States v. Lopez–Gil*, 965 F.2d 1124, 1135 (1st Cir. 1992) (per curiam), an expert chemist determined, after performing a chemical analysis, that a controlled substance was cocaine base. The expert chemist also testified, however, that the substance was not "crack." The district court sentenced defendant using the enhanced penalty provisions applicable to violations involving cocaine base. On appeal the First Circuit observed that

> [d]istrict judges are forced to rely on the expert testimony of chemists who specialize in drug analysis in order to determine the identity of a substance.
>
> In this instance, Chemist Vallejo clearly testified that although the substance was not crack, it was indeed cocaine base. This convincing testimony formed the basis for the district court's sentence.

*Id.* at 1135. The court of appeals then remanded the case to the district court for a specific factual finding concerning the substance at issue.

The Ninth Circuit, by contrast, has rejected a chemical definition of "cocaine base." *Shaw*, 936 F.2d at 416. The Ninth

Circuit in *Shaw* rested its decision on a single reference to "crack" in a commentary to Guidelines § 2D1.1, comments in the Congressional Record and definitions from the New Dictionary of American Slang to reach the conclusion that Congress intended "cocaine base" to mean "crack." 936 F.2d at 415–16. We are not persuaded by this analysis. In Guidelines § 2D1.1 the only reference to "crack" is found in a drug equivalency table for the purpose of converting different types of controlled substances into a marihuana equivalent. That table provides: "1 gm of Cocaine Base ("Crack") = 20 kg of marihuana." Guidelines § 2D1.1, Application Note 10. We do not believe that a parenthetical phrase in a drug equivalency table in an application note to a Guideline is enough to narrow the meaning of the chemical term selected by Congress. Nothing in the legislative history directly supports the Ninth Circuit's conclusion that Congress did not intend a chemical definition of "cocaine base."

The *Shaw* Court also gleaned a definition of "cocaine base" from definitions of "cocaine freebase" that arguably refer to "crack." Congress, however, did not use the term "cocaine freebase" in the statute but instead selected the term "cocaine base." As the Ninth Circuit observed:

> The Senate and the House each had a version of a bill to amend 21 U.S.C. § 841(b). The House version provided tougher penalties for "cocaine freebase," while the Senate version provided penalties for "cocaine base." Congress ultimately enacted the Senate version by incorporating it into H.R. 5484, which became the Anti–Drug Abuse Act of 1986.

*Shaw*, 936 F.2d at 415 (citations omitted). The definition of "cocaine freebase"—a term found in a version of the proposed bill that was considered by Congress and rejected in the bill's final form—sheds little light on the meaning of a different term selected by Congress. Moreover, the *Shaw* Court's definition of "cocaine freebase" relies on a dictionary of questionable force and on a report of the House Committee on

the Judiciary that relates not to the amendments at issue but instead to a White House conference on drug abuse advocated by the committee. *Id.* at 415–16.

Ironically the Ninth Circuit stated that there are no congressional statements "indicating that 'cocaine base' refers to cocaine that is a 'base' for chemistry purposes" and concluded that Congress did not intend the term "cocaine base" to be defined "by its testing basic rather than acidic." *Id.* at 416. We believe that the language of the statute itself speaks to the issue. Congress selected a chemical term, a term whose meaning is undisputed in the scientific community. Although "crack," the most common form of cocaine base, arguably has a meaning discernible by the community, *see Thomas*, 932 F.2d at 1090 ("[E]ven many children on the street know the difference between powdered cocaine and crack."), Congress did not use the term "crack." Rather, it chose a term of art that should be defined by reference to the scientific community from which it derives. *See Corning Glass Works*, 417 U.S. at 201, 94 S.Ct. at 2231.

■ Just because other courts of appeals differ in their definitions of a term does not mean that the term is void for vagueness. In this case the district court had before it Dr. Schwartz's testimony that there was agreement in the scientific community as to the definition of "cocaine base." He provided a chemical formula and discussed methods of distinguishing cocaine base from cocaine hydrochloride. Dr. Zedeck also indicated that a properly performed test could differentiate cocaine base from other forms of cocaine; he performed two such tests on the substance at issue.

Applying the chemical definition of "cocaine base" to the facts of this case it is clear that the substance was cocaine base. Both the DEA chemist and Dr. Zedeck, Jackson's expert chemist, identified the substance as cocaine base. On the facts of this case—the proper inquiry for a void-for-vagueness challenge not involving the First Amendment—there was no dispute over whether the substance was cocaine base.

There was instead a question whether the substance was pure enough to be used as "crack." As we already have discussed, the definition of "cocaine base" is not limited to "crack." Admittedly, the drug's low level of purity is troublesome. Nonetheless Congress did not mention the purity of cocaine base as a factor in the enhanced penalty provisions.

Moreover, Jackson cannot complain that he was not on notice that he would be subject to enhanced penalties. *See, e.g., Kolender*, 461 U.S. at 357, 103 S.Ct. at 1858. Jackson pleaded guilty to possession with intent to distribute cocaine base. At Jackson's plea allocution Judge Lasker confirmed that Jackson was aware that Jackson faced a ten year mandatory minimum prison term. In addition, we have held that the enhanced penalty provisions do not violate due process even if a defendant does not know the specific nature and amount of the controlled substance. *See United States v. Collado–Gomez*, 834 F.2d 280 (2d Cir.1987) (per curiam), *cert. denied sub nom. Quintero–Gonzalez v. United States*, 485 U.S. 969, 108 S.Ct. 1244, 99 L.Ed.2d 442 (1988).

Regarding the "more important aspect of the vagueness doctrine[,] ... 'the requirement that a legislature establish minimal guidelines to govern law enforcement,'" *Kolender*, 461 U.S. at 358, 103 S.Ct. at 1858 (citation omitted), as we have explained we believe that "cocaine base" has a chemical definition that should prevent arbitrary and discriminatory enforcement by courts or prosecutors.

CONCLUSION

Expert testimony in this case established that there is a clear definition of "cocaine base" undisputed in the scientific community. It is that meaning that Congress intended section 841(b) to have. That other courts of appeals have interpreted the statute differently does not render it void for vagueness. Applying the scientific meaning of "cocaine base" to the facts of this case, it is clear that Jackson is subject to the enhanced penalty provisions of section 841(b) and Guidelines § 2D1.1 and there-

fore those provisions as applied are not void for vagueness.

Accordingly, we vacate the decision of the district court and remand for resentencing pursuant to the enhanced penalty provisions.