**UNITED STATES of America,**

v.

**WEI Heng Lee, a/k/a "Chih Ching Chang", Andrew Wong, David Lien, a/k/a "Lobster", Edwin Arroyo, a/k/a "Lumpy", Tony Jain, a/k/a "Ah Kee", John Doe, a/k/a "Sunday", John Doe, a/k/a "Anthony", Nguyen Phong, a/k/a "Turbo", Nguyen Chau a/k/a "Danny", Edmund Jeong a/k/a "BeeBee", Ruan Jian Wei, a/k/a "Ken", a/k/a "Dai Saw", Defendants.**

**No. S1 93 Cr. 1017 (LLS).**

United States District Court, S.D. New York.

Sept. 13, 1994.

U.S. Atty., S.D.N.Y., Southern District of New York, New York City (Steven M. Cohen, Elizabeth Glazer, of counsel) for U.S.

LaRossa Mitchell & Ross, New York City (Andrew J. Weinstein, of counsel) for David Lien.

Paul McAllister, New York City, for Edwin Arroyo.

Richard Jasper, New York City, for Nguyen Phong.

Legal Aid Soc. Federal Defender Services Unit, New York City (Leonard F. Joy, of counsel), for Nguyen Chau.

Margaret Alverson, New York City, for Edmund Jeong.

Louis R. Aidala, New York City, for Ruan Jian Wei.

Camille Marie Abate, New York City, for Sunday Francisco.

## OPINION AND ORDER

STANTON, District Judge.

Defendants move for discovery: *Brady* material, a list of government witnesses, bills of particulars, disclosure of evidence of crimes, wrongs, or acts that the government intends to introduce at trial pursuant to Fed. R.Evid. 404(b), disclosure of the identity of alleged co-conspirators, disclosure of co-conspirator statements, and grand jury minutes. In addition:

Defendants David Lien, Edwin Arroyo, Nguyen Chau, and Jian Wei Ruan move to suppress statements.

Defendants Nguyen Phong, Edmund Jeong, Lien, Chau, Ruan, and Arroyo seek a pre-trial hearing to explore the possibility that suggestive procedures contributed to four witnesses' identifications of them from photo arrays.

Defendant Sunday Francisco, charged in the superseding indictment[1] as John Doe

---

1. A later superseding indictment, S3 93 Cr. 1017 (LLS), was filed on August 17, 1994. It differs somewhat from the one under which these motions were made, which is S1 93 Cr. 1017 (LLS),

a/k/a "Sunday," and Arroyo move for severance under Fed.R.Crim.P. 14.

Defendants Lien and Francisco move to strike allegedly prejudicial surplusage from the indictment.

In addition to the motions listed above, Lien, Arroyo, and Francisco move as follows. Lien moves (1) for an *in limine* order requiring the government "to plead and prove all of the essential provisions" of any state law offense; (2) to dismiss Counts Three through Eight; (3) to dismiss counts One and Two because 18 U.S.C. § 1961(1)(A) "is unconstitutionally vague on its face and as applied"; (4) for an order prohibiting the government from offering evidence of any criminal conduct other than that charged in paragraphs 7–22, 25, 27, 29, 31, 33, and 35–50; (5) for an order "directing the government to preserve for trial the originals of all handwritten notes of law enforcement interview[s] with witnesses"; and (6) to preclude the introduction at trial of photographs of the deceased victims.

Arroyo moves (1) to preclude the admission of evidence of prior convictions; (2) for discovery pertaining to a photo array in which his picture was displayed; and (3) for a pre-trial hearing concerning any hearsay declarations which the government may seek to introduce at trial.

Francisco moves to dismiss Counts One, Two, Four through Eight, Ten, Eleven, and Sixteen through Eighteen of the indictment, "for failure to state an essential element of each crime" and "for impermissibly vague allegations." If Counts Sixteen and Seventeen are not dismissed, he contends that those counts are multiplicitous, and that the government should be compelled to elect between them.

## BACKGROUND

The twenty-count indictment charges the defendants with violations of 18 U.S.C.

§§ 924, 1951, 1958 & 1959, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"), and the narcotics laws, as members of the White Tigers, a criminal organization which operated principally in the Chinatown section of New York, and in Queens. The indictment states that the defendants conspired to commit, and committed, various acts of murder, arson, robbery, and narcotics trafficking.

## DISCUSSION

### 1. *Motions to suppress statements*

Resolution of the issues raised by the motions of Lien, Chau, and Arroyo to suppress statements requires a hearing. Accordingly, decision on those motions is reserved until after the evidence is heard.

The government states that it does not intend to introduce the statement by Ruan in its case in chief. (Gov't Mem. at 16.) Accordingly, Ruan's motion to suppress that statement is denied without prejudice.

### 2. *Challenges to identification procedures*

■ Defendants Lien, Phong, Chau, Jeong, Ruan, and Arroyo seek a pre-trial hearing to explore the possibility that suggestive procedures contributed to four witnesses' identifications of defendants from photo arrays. None of the defendants contends that the arrays themselves were suggestive, nor does any provide a basis for belief that the procedures used in showing the photographic arrays were suggestive.

The government "anticipates that it will call at trial four witnesses who have identified the defendants from photoarrays. Each of those witnesses had previously seen the defendant they identified on *numerous* occasions." (Gov't Mem. at 14 (citation omitted) (emphasis in original); Murphy Aff. ¶¶ 2–3.) The government claims that the witnesses'

filed January 24, 1994. The primary differences are that S3 drops references to defendants Wei Heng Lee, Andrew Wong, Edmund Jeong, and Ruan Jian Wei, presumably because on February 28, 1994, Wei Heng Lee pleaded guilty to a superseding information, S2 93 Cr. 1017 (LLS), on May 25, 1994, this court on consent ordered defendants Jeong and Ruan severed from their

co-defendants and tried separately on Count Twenty of S1, and on August 2, 1994, Andrew Wong pleaded guilty. S3 also names Gary Soo Kee Tam, who was charged in S1 as John Doe a/k/a "Anthony". This opinion and order, like the papers submitted on the motion, refers to S1 except where otherwise clearly stated.

identifications are independently reliable because of the witnesses' opportunities to view the defendants prior to the photo arrays, and thus that the identifications would be admissible even if the identification procedures were unduly suggestive. *See generally United States v. Thai*, 29 F.3d 785, 807–12 (2d Cir.1994); *United States v. Concepcion*, 983 F.2d 369, 377–78 (2d Cir.1992). Finally, the government contends that a pretrial hearing would prematurely identify government witnesses, which would subject those witnesses and their families to "significant danger." (Gov't Mem. at 15–16.)

Where, as here, defendants' motions were based entirely on speculation whether the procedures used in identifications from photo arrays might have been suggestive, and defendants did not challenge the arrays themselves, the court in *United States v. Ruggiero*, 824 F.Supp. 379, 395–96 (S.D.N.Y.1993), rejected defendants' request for a pre-trial hearing to explore the possibility that the identification procedures were suggestive. Defendants' motions for such a pretrial hearing are likewise denied. Defendants' concerns may be adequately handled at trial. *See id.* at 396.

### 3. *Discovery*

#### a. Witness list

Defendants' requests for a list of government witnesses are denied, as none made the "specific showing of need" required to establish entitlement to such a list. *United States v. Biaggi*, 675 F.Supp. 790, 811 (S.D.N.Y.1987); *see United States v. Love*, 859 F.Supp. 725, 738 (S.D.N.Y.1994); *United States v. Yu*, No. 94 Cr. 375 (MBM), 1994 WL 414352, at *2 (S.D.N.Y. Aug. 8, 1994); *United States v. Munoz*, 736 F.Supp. 502, 504–05 (S.D.N.Y.1990).

#### b. *Brady* and impeachment material

The government acknowledges its obligation under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963),

stating that it "is aware of no such material relating to defendants" and that it "will provide timely disclosure if any such material comes to light." (Gov't Mem. at 19.) In order to assure defendants adequate time to utilize it, the government is directed to provide any *Brady* and impeachment material at least two weeks before trial, unless the government makes a particularized showing justifying exceptions.

#### c. Identity of co-conspirators

Lien and Jeong request disclosure of the names of alleged co-conspirators. The government states that it "will provide a list of co-conspirators two weeks before trial". (Gov't Mem. at 21–22.) To the extent that defendants request earlier disclosure, those requests are denied.

#### d. Bills of particulars

Defendants Lien, Phong, Chau, Jeong, and Ruan move for bills of particulars. " 'A bill of particulars should be required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused.' " *United States v. Torres*, 901 F.2d 205, 234 (2d Cir.) (quoting *United States v. Feola*, 651 F.Supp. 1068, 1132 (S.D.N.Y.1987), *aff'd*, 875 F.2d 857 (2d Cir.1989)), *cert. denied sub nom. Cruz v. United States*, 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990). The indictment specifies sixteen racketeering acts.[2]

The government is directed to provide defendants (1) the specific location "in the Chinatown section of New York" where the robbery or robberies alleged in paragraphs 12, 36, and 42 of the indictment is (are) said to have occurred; (2) the dates of the robberies of the Golden Pond Restaurant alleged in paragraphs 18 and 20; (3) the date of the robbery of the No. 1 Noodle Shop alleged in paragraphs 21 and 39; and (4) the name and address of the business on Allen Street, New York, New York, alleged in paragraphs 17 and 37 to have been robbed.[3]

---

**2.** The latest superseding indictment charges only fifteen racketeering acts, omitting Racketeering Act Two (Conspiracy to Murder Christopher

Chin, a/k/a "Little Chris") of S1 93 Cr. 1017 (LLS).

**3.** The government has stated that it "will endeavor to provide Francisco with a Bill of Particulars

Upon receipt of this information, defendants will be sufficiently apprised of the charges against them to enable them to prepare a defense, to avoid surprise at trial, and to enable them to interpose a plea of double jeopardy if necessary. *See Torres*, 901 F.2d at 234; *United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir.1988); *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir.1987). Accordingly, their requests for bills of particulars are denied except as noted above.

e. Disclosure of evidence of crimes, wrongs, or acts that the government intends to introduce at trial pursuant to Fed.R.Evid. 404(b)

■ The government agrees to disclose the substance of material it intends to introduce under Fed.R.Evid. 404(b) before offering any such material, but resists any time requirement for this disclosure. It claims that the evidence it "wishes to offer may well change as the proof and possible defenses crystallize." (Gov't Mem at 29–30.)

Fed.R.Evid. 404(b) states that "upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial." The government is directed to provide, two weeks before trial, notice of the general nature of any Rule 404(b) evidence it intends to introduce. Evidence sought to be admitted under that rule for which at least two weeks pre-trial notice was not given shall be admitted only if good cause is shown to excuse the failure to provide such notice.

f. Co-conspirator statements

■ Francisco moves for an order "[u]nder F.R.Cr.P. 16(a)(1)(A), directing the government to disclose all statements of co-conspirators." His attorney contends that

[w]ith regard to statements of indicted co-conspirators, they should be supplied to determine if any Bruton [*Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) ] problems exist. As for statements of unindicted co-conspirators, such statements are necessary in order for me to properly prepare the defense of this case. All statements are in the Government's possession, and cannot be obtained from any other source.

(Abate Dec. ¶ 29) (alteration added).

"The statements made by co-conspirators are not discoverable under Federal Rule of Criminal Procedure 16(a)." *United States v. Munoz*, 736 F.Supp. 502, 504 (S.D.N.Y.1990) (citations omitted). Moreover, "*Bruton* and its progeny ... do not mandate pretrial disclosure of statements to the defense." *Id.* Francisco's request for disclosure of statements by co-conspirators is denied.

g. Grand jury minutes

■ Francisco moves for discovery of grand jury minutes, claiming that because the indictment charges two individuals using the pseudonym "John Doe," the grand jury may have confused evidence relating to these two individuals during its deliberations. This argument is based purely on speculation. The two individuals designated 'John Doe' are also identified by markedly different aliases ("Sunday" versus "Anthony."),[4] which diminishes the likelihood that confusion occurred. The motion is denied.

h. Information relating to the photo identifications

■ Arroyo seeks information relating to the photo array identifications. He requests the number of such procedures, names and addresses of all parties present, names and addresses of all parties alleging recognition of him, the alleged basis for that recognition, names and addresses of parties who did not

---

setting forth additional information relevant to Count Ten." (Gov't Mem.Opp. Francisco's Mots. at 10.)

**4.** Francisco's counsel acknowledges this fact, but requests "... disclosure of the Grand Jury minutes to check whether, in the presentation, the qualifying 'a/k/a' was consistently used in the

testimony to distinguish between John Does, or whether it was only used at the time of the vote. I submit that this makes out a showing of particularized need that overcomes the presumption of secrecy in grand jury proceedings." (Abate Dec. at ¶ 21.)

recognize him, and the event in connection with which the procedure was being conducted. He claims that this information is within the control of the government, that it cannot be obtained from any other source, (McAllister Aff. ¶ 7), and he states that the information "is not only necessary for an adequate preparation for trial but is vital to a determination of what, if any, pre-trial litigation may be necessary (e.g. a *Wade* Hearing) to insure that Mr. Arroyo receives a fair trial." (McAllister Aff. ¶ 8.)

Requests for information about pre-trial identifications made by government witnesses fall "within the scope of Rule 16," and, "[w]ithin the limitations imposed by the wording of Rule 16 and by the Jencks Act (18 U.S.C. § 3500), such information is discoverable." *United States v. Mitchell*, 540 F.2d 1163, 1166 (3d Cir.1976), *cert. denied*, 429 U.S. 1099, 97 S.Ct. 1119, 51 L.Ed.2d 547 (1977). Arroyo's requests for disclosure of all parties present, of all parties alleging recognition of him, the alleged basis for any recognition, and of all parties who did not recognize him are denied. Those requests would prematurely disclose the identity of government witnesses. *See* Fed.R.Crim.P. 16(a)(2) ("Nor does the rule authorize the discovery or inspection of statements made by government witnesses or prospective government witnesses except as provided in 18 U.S.C. § 3500"); *United States v. Taylor*, 707 F.Supp. 696, 704–05 (S.D.N.Y.1989) (considering defendant's request for, *inter alia*, "names of all persons conducting such photo spreads and lineups, and those of other persons present;" court stated "Although information regarding pre-trial identifications of a defendant may be 'discoverable', it is subject to the limitations of Rule 16 and 18 U.S.C. § 3500" and found that "the government need disclose and make available at this time only those photographs and other evidence discoverable as tangible evidence under Rule 16(a)(1)(C). . . . [A]ny tangible identification evidence, such as photographs . . . upon which the government intends to rely at trial should be made available to the defendant at this time"); *United States v. Feola*, 651 F.Supp. 1068, 1147 (S.D.N.Y.1987) (defendant requested "disclosure of the names and addresses of each person to whom a photo-

graph alleged to be that of any defendant or to whom the person of any defendant was displayed for the purpose of any identification; the time, date, and place of such display; the names and addresses of each person then and there present; and a copy of each and every photograph taken or displayed at that time and place;" court held that "identity information regarding such identification witnesses should not be disclosed to defendants, because pre-trial release of the identity of government witnesses and informants is not required for the preparation of the defense, particularly when balanced against the potential danger to these witnesses in a narcotics case such as this"), *aff'd*, 875 F.2d 857 (1989).

His requests for the number of such procedures, and the event or events in connection with which procedures were conducted, are denied for lack of any authority supporting them, except to the extent that such information must be disclosed as *Brady* material.

### 4. *Severance*

■ Defendants Arroyo and Francisco seek severance under Fed.R.Crim.P. 14. Arroyo moves for a severance based on the possibility of (1) prejudicial spillover among the multiple crimes with which he is charged, (McAllister Aff. ¶ 5) ("Mr. Arroyo seems to be the only person accused of *both* narcotics related offenses and other RICO crimes. Thus, Mr. Arroyo should have his narcotics related allegations tried before a different jury than the one before which the other RICO allegations are tried."); (2) prejudicial spillover from his co-defendants; and (3) government intent to offer the statement of a co-defendant. Francisco's motion is based only on the possibility of prejudicial spillover from evidence adduced against his co-defendants.

As recently stated by the Court of Appeals,

Notwithstanding proper joinder, counts charged in the same indictment may be severed, under Fed.R.Crim.P. 14, if joinder presents a risk of prejudice. Given the balance struck by Rule 8, which "authorizes some prejudice" against the defendant, a defendant who seeks separate trials

under Rule 14 carries a heavy burden of showing that the joinder will result in "substantial prejudice."

*United States v. Amato,* 15 F.3d 230, 237 (2d Cir.1994) (citation omitted). Arroyo does not challenge the joinder as improper under Fed. R.Crim.P. 8. He does little more than point out that he is charged with both narcotics offenses and other RICO crimes. He does not specify any substantial prejudice he will suffer from joinder of those offenses, and accordingly has not met the heavy burden required to justify a Rule 14 severance of the various charges against him. If during trial it appears that Arroyo is being prejudiced by joinder of those charges, this question may be reexamined at that time.

 The motions based on the possibility of prejudicial spillover from co-defendants are denied. The Supreme Court has stated that

> when defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.

*Zafiro v. United States,* —— U.S. ——, ——, 113 S.Ct. 933, 938, 122 L.Ed.2d 317 (1993); *United States v. Haynes,* 16 F.3d 29, 32 (2d Cir.1994); *see also United States v. Locascio,* 6 F.3d 924, 947 (2d Cir.1993) (Court of Appeals has "repeatedly recognized that joint trials involving defendants who are only marginally involved alongside those heavily involved are constitutionally permissible"), *cert. denied,* —— U.S. ——, 114 S.Ct. 1645, 1646, 128 L.Ed.2d 365 (1994). Neither Arroyo nor Francisco has shown that a joint trial will compromise any specific trial right, or any reason to believe that a jury would be unable to render a reliable decision about his guilt or innocence. Nor has either movant shown any reason why the potentially prejudicial effect of evidence admissible against his co-defendants could not be adequately mitigated by a limiting instruction. *See Zafiro,* —— U.S. at ——, 113 S.Ct. at 938. Francisco's additional speculation as to the prejudicial effect of any evidence admissible against his

co-defendants under Fed.R.Evid. 404(b), without specifying evidence so admissible, is insufficient to satisfy the "heavy burden" required to justify a severance.

Arroyo's request for a severance based on the possibility that the government will introduce the statement of a co-defendant is denied without prejudice to renewal should circumstances so warrant.

### 5. *Dismissal of various counts of the indictment*

#### a. Lien

Lien argues that Counts Three through Eight of the "S1" indictment are facially insufficient because they fail to specify the provisions of state law alleged to have been violated. In its memorandum, the government states that it "does not agree that the Counts at issue fail to include an essential element of the Section 1959 offenses," but that it would nonetheless seek a superseding indictment to cure that alleged defect. (Gov't Mem. at 10.)

A superseding indictment, "S3" 93 Cr. 1017 (LLS), was filed on August 17, 1994. Counts Three through Eight of S3 set forth the sections of New York Penal law allegedly violated. Accordingly, Lien's motion to dismiss those counts is denied.

#### b. Francisco

Francisco moves to dismiss Counts One, Two, and Four through Eight, contending that they are defective because they fail to "establish" his membership in the alleged enterprise. He also moves to dismiss Counts Ten, Eleven, and Sixteen through Eighteen, contending that they are defective because they fail to "establish" "the essential element of interstate commerce."

 Those arguments are meritless. " '[A]n indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.' " *United States v. Stavroulakis,* 952 F.2d 686, 693 (2d Cir.) (quoting *United States v. Tramunti,* 513 F.2d 1087, 1113 (2d Cir.), *cert. denied,* 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975)),

*cert. denied*, —— U.S. ——, 112 S.Ct. 1982, 118 L.Ed.2d 580 (1992). The indictment charges Francisco with being "employed by and associated with" the White Tigers, which is claimed to be a racketeering enterprise. (Indictment at ¶¶ 1, 2, 5.) It also alleges his participation in five racketeering acts. (Indictment at ¶¶ 13–17.) Moreover, the paragraphs of the indictment charging Counts Ten and Eleven each include the allegation that Francisco and others committed various acts which "would and did thereby obstruct, delay, and affect commerce and the movement of articles and commodities in commerce." (Indictment at ¶¶ 37, 38.) Counts Sixteen through Eighteen charge violations of 18 U.S.C. § 924(c) during the acts charged in Counts One through Eight, Ten, and Eleven. The indictment thus sufficiently alleges Francisco's involvement in the enterprise, and that his acts affected interstate commerce. Whether the government will be able to establish the truth of the allegations is a question which will await trial.

██ In the alternative, Francisco argues that Counts Sixteen and Seventeen are multiplicitous because they "charge a single offense—the use of a firearm during one transaction." (Abate Dec. at ¶ 18.) "An indictment is multiplicitous when a single offense is alleged in more than one count. The multiplicity doctrine is based upon the double jeopardy clause of the Fifth Amendment, which 'assur[es] that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense.'" *United States v. Fiore*, 821 F.2d 127, 130 (2d Cir.1987) (citations omitted) (alteration in original).

Count Sixteen charges a violation of 18 U.S.C. § 924(c), alleging that Francisco

used and carried a firearm during and in relation to a crime of violence, to wit, the conspiracy to murder Kamran Keypour, Faraj Hezghia, Arik Francis and Anna Chang, the murder of Kamran Keypour and the assault of Faraj Hezghia, Arik Francis and Anna Chang charged in Counts One, Two, Four, Five, Six, Seven and Eight.

Count Seventeen charges that Francisco violated 18 U.S.C. § 924(c), when he used a firearm "during and in relation to a crime of violence, to wit, the robbery of Kamran Keypour, Faraj Hezghia, Arik Francis and Anna Chang charged in Counts One, Two and Eleven." Because the government may prosecute for multiple violations of § 924(c)(1) "where the defendant commits multiple drug-trafficking crimes or violent crimes, and the government can link the firearms to those crimes", *United States v. Lindsay*, 985 F.2d 666, 674 (2d Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 103, 126 L.Ed.2d 70 (1993), the government need not elect between Counts Sixteen and Seventeen at this time. Whether the government's proof will establish separate crimes to support both counts must await trial. *See Lindsay*, 985 F.2d at 676–77.

### 6. *Prejudicial surplusage*

Lien and Francisco move to strike allegedly prejudicial surplusage from the indictment. The Court of Appeals has stated that

Motions to strike surplusage from an indictment will be granted only where the challenged allegations are "not relevant to the crime charged and are inflammatory and prejudicial." "[I]f evidence of the allegation is admissible and relevant to the charge, then regardless of how prejudicial the language is, it may not be stricken." In RICO cases, courts have refused to strike allegations of organized crime connections that "serve to identify the 'enterprise' and the means by which its members and associates conduct various criminal activities."

*United States v. Scarpa*, 913 F.2d 993, 1013 (2d Cir.1990) (citations omitted) (alteration in original). The language that Lien and Francisco want stricken is relevant to the crimes charged, and those motions are accordingly denied without prejudice to renewal should the language objected to "not be the subject of proof or a reasonable inference from a subject of proof." *United States v. Rahman*, No. S3 93 Cr. 181 (MBM), 1994 WL 388927, at *6 (S.D.N.Y. July 22, 1994).

### 7. *Lien's remaining motions*

#### a. RICO, 18 U.S.C. § 1959, and state law

██ Lien contends that RICO incorporates the substantive provisions of state law,

and he seeks to require the government to prove "the essential provisions of the state predicates." (Lien Mem. at 22.) In so doing, Lien urges the court to recognize "an unnoticed flaw in the reasoning underlying the entire line of cases addressing this issue." *Id.* Although Lien describes his argument as one seeking proof of each element of the state law predicate crimes, its actual thrust is to require the government to comply with the New York State statutory and constitutional requirements regarding corroboration of accomplice testimony. (*See* Lien Mem. at 21–28.) The Court of Appeals has explicitly rejected this argument. *See United States v. Paone,* 782 F.2d 386, 393–94 (2d Cir.1986) ("We hold that the district court correctly ruled that the New York corroboration of accomplice testimony requirement is not incorporated in a RICO prosecution"), *cert. denied,* 483 U.S. 1019, 107 S.Ct. 3261, 97 L.Ed.2d 761 and *sub nom. Marino v. United States,* 483 U.S. 1019, 107 S.Ct. 3262, 97 L.Ed.2d 761 (1987). His request is accordingly denied.

■ Lien also contends that 18 U.S.C. § 1959, which proscribes violent crimes in aid of racketeering activity, should be read to incorporate the state law requirements of each underlying offense. He bases his argument on the legislative evolution of § 1959, and the fact that it was "initially passed as an adjunct" to 18 U.S.C. § 1952, the Interstate Transportation in Aid of Racketeering statute. He argues that because § 1952 has been held to incorporate the substantive requirements of state law, the relationship between § 1952 and § 1959 compels the conclusion that state law should be incorporated into § 1959 as well. However, this argument ignores the language of § 1959(b), which states that " 'racketeering activity' has the meaning set forth in section 1961 of this title." As observed above, the Court of Appeals has rejected the incorporation of state law provisions into section 1961, and Lien's request that this court do so in the context of § 1959 is accordingly denied. *See United States v. Concepcion,* 983 F.2d 369, 380 (2d Cir.1992) (noting that § 1959 "was enacted to complement RICO").

### b. Vagueness challenges to RICO and 18 U.S.C. § 1959

Lien claims that RICO is unconstitutionally vague either because (1) the phrase "chargeable under state law" in 18 U.S.C. 1961(1)(A) does not have its ordinary meaning and usage; (2) if 18 U.S.C. 1961(1)(A) has been correctly interpreted by the Courts of Appeals, "then the statute fails to provide adequate notice;" and (3) RICO's pattern requirement is unconstitutionally vague.

Lien asserts that § 1959 is unconstitutionally vague, facially and as applied, because (1) an enterprise cannot engage in racketeering activity; and (2) "it fails to provide any quantifiable basis so that one could determine when an enterprise has, in fact, 'engaged in racketeering activity.' " (Lien Mem. at 42.)

"Vagueness challenges to statutes that do not involve First Amendment interests are examined in light of the facts of the case at hand." *United States v. Jackson,* 968 F.2d 158, 161 (2d Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 664, 121 L.Ed.2d 589 (1992); *United States v. Coonan,* 938 F.2d 1553, 1562 (2d Cir.1991), *cert. denied sub nom. Kelly v. United States,* — U.S. —, 112 S.Ct. 1486, 117 L.Ed.2d 628 (1992). To the extent that Lien mounts facial challenges to RICO and § 1959, those challenges are rejected. *See United States v. Whittaker,* 999 F.2d 38, 42 (2d Cir.1993) ("Other than in the First Amendment context, vagueness challenges also must be 'examined in light of the facts of the case, on an as-applied basis' ") (citing *United States v. McElroy,* 910 F.2d 1016, 1021 (2d Cir.1990)); *United States v. Nadi,* 996 F.2d 548, 550 (2d Cir.) ("[V]agueness challenges that do not involve the First Amendment must be examined in light of the specific facts of the case at hand and not with regard to the statute's facial validity"), *cert. denied,* — U.S. —, 114 S.Ct. 347, 126 L.Ed.2d 311 (1993); *Jackson,* 968 F.2d at 161 ("Because this challenge does not implicate First Amendment freedoms the district court's conclusion that the provisions are facially invalid was erroneous and must be reversed").

■ Lien's challenges to the statutes as applied are without merit. The Court of

Appeals for the Second Circuit, interpreting the phrase "chargeable under state law" in 18 U.S.C. § 1961(1)(A) in *Coonan,* 938 F.2d at 1564, reiterated its conclusions in *United States v. Paone,* 782 F.2d 386 (2d Cir.), *cert. denied,* 479 U.S. 882, 107 S.Ct. 269, 93 L.Ed.2d 246 (1986) and *United States v. Friedman,* 854 F.2d 535 (2d Cir.1988), *cert. denied,* 490 U.S. 1004, 109 S.Ct. 1637, 104 L.Ed.2d 153 (1989), that Congress did not intend to incorporate state procedural and evidentiary rules into the RICO statute. Finding instead that Congress intended to define in a generic sense the conduct that would constitute a predicate act under RICO, the Court of Appeals had "little difficulty concluding that a state prosecutor's ability to obtain an indictment" for particular criminal conduct "is wholly irrelevant to whether the underlying conduct satisfies the 'chargeable under State law' definition. Rather, section 1961(1)(A) merely describes the type of generic conduct which will serve as a RICO predicate and satisfy RICO's pattern requirement." *Coonan,* 938 F.2d at 1564 (citations omitted).

The language of RICO as interpreted by the Court of Appeals neither " 'forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application;' " *Coonan,* 938 F.2d at 1561 (quoting *Connally v. General Construction Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926)). It is accordingly not constitutionally infirm. The conduct with which Lien is charged, including murder, armed robbery, arson, and conspiracy, is clearly conduct generically "chargeable under State law." *See United States v. Coiro,* 922 F.2d 1008, 1017 (2d Cir.) ("As RICO was plainly intended to encompass the illegal activities of organized crime, we are confident that the statute provided Coiro with fair notice that his contemplated conduct—bribery and money laundering on behalf of the Ruggiero narcotics enterprise—fell within RICO's strictures, and thus the statute is not unconstitutionally vague as applied to him"), *cert. denied,* 501 U.S. 1217, 111 S.Ct. 2826, 115 L.Ed.2d 996 (1991).

· Lien urges that "the time has come to denounce RICO as unconstitutionally vague" because of the "mounting empirical proof" since the Supreme Court's decision in *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), that RICO's pattern requirement cannot be uniformly applied. However, the Court of Appeals has expressly declined to find RICO's pattern requirement unconstitutionally vague. *See Coiro,* 922 F.2d at 1016–17.

■ Lien's attacks on 18 U.S.C. § 1959 are no more successful. Although he claims that the statute's use of the phrase "an enterprise engaged in racketeering activity" renders it vague, he has not specified how any line-drawing problems of the type he describes are presented by the indictment. All of the defendants are alleged to have been members of the White Tigers, whose purposes were unlawful conduct like the acts of murder, arson, robbery, and narcotics trafficking charged against defendants. Lien's challenges to § 1959 are rejected.

c. Preservation of notes

Lien's motion for preservation of "all handwritten notes of law enforcement interview[s] with witnesses" is granted to the extent that the notes are not incorporated into formal reports. *See United States v. Elusma,* 849 F.2d 76, 79 (2d Cir.1988) (government "need not preserve such notes if the agents incorporate them into formal reports") (citations omitted), *cert. denied sub nom. Darlington v. United States,* 489 U.S. 1097, 109 S.Ct. 1570, 103 L.Ed.2d 936 (1989). The government is further directed to produce to defendants a list and description of any investigative documents which would have been discoverable under *Brady* or Fed.R.Crim.P. 16 which were destroyed by government agents during the course of and following the investigation of this case. *See United States v. Flores,* No. 90 Cr. 166 (LLS), 1990 WL 116732, at *1 (S.D.N.Y. Aug. 9, 1990); *United States v. Taylor,* 707 F.Supp. 696, 705 (S.D.N.Y.1989).

d. Preclusion of crime scene photos

Lien moves to preclude the admission of various gruesome crime-scene photos believed to be of the bodies of Jian Ping Liu and Kamran Keypour. This is premature, as

the government has not yet determined which photographs it intends to offer at trial. (Gov't Mem. at 31.) The motion is denied without prejudice to renewal at trial.

### 8. *Arroyo's remaining motions*

Arroyo moves to preclude the admission of any evidence of prior bad acts which the government may seek to introduce at trial, to preclude the admission of evidence of prior convictions, and for a pre-trial hearing concerning any hearsay declarations which the government may seek to introduce at trial. He provides no authority in support of these requests, nor does he specify the evidence to which they are directed. To the extent they are not already dealt with above, those motions are denied.

### CONCLUSION

Decision of the motions by Lien, Chau, and Arroyo to suppress statements is reserved until after a hearing. Defendants' motions for discovery are denied except as set forth above. Lien's motion for preservation of "all handwritten notes of law enforcement interview[s] with witnesses" is granted to the extent noted above. All other motions by defendants are denied for the reasons stated above.

So ordered.