### UNITED STATES of America, Plaintiff–Appellee,

### v.

### Muhammed ABDUL, Defendant– Appellant.

### No. 96–3419.

United States Court of Appeals, Seventh Circuit.

Submitted March 21, 1997.

Decided Aug. 27, 1997.*

Bradley W. Murphy (submitted), Office of the United States Attorney, Peoria, IL, for Plaintiff–Appellee.

George F. Taseff, Office of the Federal Public Defender, Peoria, IL, for Defendant–Appellant.

Before LAY,** CUMMINGS, and DIANE P. WOOD, Circuit Judges.

LAY, Circuit Judge.

Muhammed Abdul pleaded guilty to possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1), and using or carrying a firearm related to drug trafficking in violation of 18 U.S.C. § 924(c).

---

\* This Court's earlier opinion and judgment issued June 10, 1997, and reported in 114 F.3d 663 were vacated on July 10, 1997, and replaced with this opinion.

\*\* The Honorable Donald P. Lay, Circuit Judge for the United States Court of Appeals for the Eighth Circuit, sitting by designation.

Abdul appealed the district court's denial of his motion to withdraw his pleas. This court affirmed the denial of the motion to withdraw the guilty plea as to the drug possession charge; however, we vacated the judgment of conviction as to the armed drug trafficking charge pursuant to *Bailey v. United States*, —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). *See United States v. Abdul*, 75 F.3d 327 (7th Cir.1996), *cert. denied*, —— U.S. ——, 116 S.Ct. 2569, 135 L.Ed.2d 1085 (1996). We remanded the case for resentencing.

On remand, the district court sentenced Abdul to 262 months' imprisonment for possession with the intent to distribute cocaine base.[1] At his resentencing, Abdul objected for the first time to being held accountable for 538.2 grams of cocaine base instead of the equivalent amount of cocaine.[2] He argued that because the government did not prove the cocaine in question was prepared with sodium bicarbonate, the substance should be treated as cocaine instead of cocaine base in calculating his sentence.

The district court rejected Abdul's argument on several grounds. First, it held that Abdul's bare objection to the presentence report was not sufficient to burden the government with proving the report's conclusion that the substance was "crack" cocaine. Second, the district court determined that Abdul's failure to object to this factual conclusion during his original sentencing precluded the court from considering the issue based on the law of the case. Alternatively, the court found that the government had proven that the substance at issue was cocaine base within the meaning of the Guidelines even though the government had not proven that sodium bicarbonate was used to produce the substance.

**Discussion**

▪ The ultimate factual conclusion that the substance at issue was crack cocaine rests on the district court's interpretation of the Guidelines that cocaine need not be processed with sodium bicarbonate to be crack under § 2D1.1. We review the interpretation of a sentencing guideline de novo. *United States v. Townsend*, 73 F.3d 747, 754 (7th Cir.1996). Abdul's primary argument stands on the notion that unless the resultant drug was manufactured with sodium bicarbonate it is not crack cocaine under § 2D1.1(c).

Crack is one of several forms of cocaine base. *See United States v. Booker*, 70 F.3d 488, 490–91 (7th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1334, 134 L.Ed.2d 484 (1996). Prior to 1993, circuit courts were divided over whether "cocaine base" under § 2D1.1 included only "crack," or whether it also broadly encompassed all other substances the scientific community generally considered to be cocaine base. *Compare United States v. Wheeler*, 972 F.2d 927, 930 (8th Cir.1992) (rejecting assertion that rock-like, smokable cocaine need also contain a hydroxyl radical to be cocaine base under § 2D1.1); *and United States v. Shaw*, 936 F.2d 412, 415–16 (9th Cir.1991) (defining cocaine base under § 2D1.1 in practical terms as cocaine that is very pure and smokable); *with United States v. Brown*, 859 F.2d 974, 976 (D.C.Cir.1988) ("The fact that 'cocaine base' may have various interpretations on the street does not make it incapable of objective definition by means of chemical analysis."); *United States v. Rodriguez*, 980 F.2d 1375, 1377 (11th Cir.1992) (per curiam) (substance that was not in "rock or crack form" nevertheless triggered § 2D1.1 enhancement because the substance fit the scientific meaning of cocaine base); *and United States v. Jackson*, 968 F.2d 158 (2d Cir.1992) (soft, sticky, oily substance that was less than thirty percent cocaine was cocaine base within the meaning of § 2D1.1 even though the expert doubted it could have been used as crack).

To clarify that a § 2D1.1 enhancement should apply only to the crack form of cocaine base, the Sentencing Commission proposed amending § 2D1.1(c). Congress

---

**1.** The 262–month sentence results from the district court's application of the United States Sentencing Commission, Guidelines Manual, § 2D1.1(b)(1). That section directs sentencing courts to impose a two-level increase to the base offense level if a defendant possessed a firearm in connection with the drug offense. While he objected to the application of § 2D1.1(b)(1) during his resentencing, Abdul abandons that issue on appeal.

**2.** Under § 2D1.1(c), a given quantity of "cocaine base" (crack) results in the same base offense level for sentencing as 100 times that quantity of "cocaine."

adopted the amendment, which became effective in 1993. The guideline now reads as follows:

> "Cocaine base," for the purposes of this guideline, means "crack." "Crack" is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form.

U.S.S.G. § 2D1.1(c), note (D). The Commission expressly indicated that the purpose of the amendment was to address the conflict among the circuits, and explained that "forms of cocaine base other than crack (*e.g.,* coca paste ... ) will be treated as cocaine." U.S.S.G.App. C., amend. 487.

The amendment does not attempt to define crack as being manufactured in any particular way. The definition, through the use of the word "usually," serves merely to illustrate a common method of conversion. See *United States v. Tolson,* 935 F.Supp. 17, 23 (D.D.C.1996) ("[T]he defendant has ignored the word 'usually.' "). If courts were to disregard the qualifying term "usually," crack dealers could avoid the penalties for distribution of crack by merely finding some substitute for baking soda in production, or by crushing the rocks so that the final product resembles powder.

Since the amendment, the Third Circuit in *United States v. James* considered a district court's conclusion that because a substance was cocaine base, it also was crack under § 2D1.1. 78 F.3d 851 (3d Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 128, 136 L.Ed.2d 77 (1996). The *James* court rejected the district court's inclusive definition of "cocaine base." It held that it was error to construe the substance as cocaine base under § 2D1.1 because the government did not prove that the cocaine base was crack. While the Third Circuit did not go so far as to require proof that the cocaine was processed with sodium bicarbonate, the district court did so in *United States v. Culpepper,* 916 F.Supp. 1257 (N.D.Ga.1995). However, the Eleventh Circuit recently reversed that decision. *United States v. Culpepper,* No. 96–8053, 116 F.3d 1493 (11th Cir. June 4, 1997) (unpublished table decision).

The amendment's background supports our conclusion that the Commission did not intend to require proof of production with sodium bicarbonate. In *United States v. Shaw,* the Ninth Circuit recognized that the distinction between cocaine base and cocaine under § 2D1.1 was intended to more severely punish dealers of cocaine in its pure, smokable, less expensive and more dangerous form. 936 F.2d at 415–16. In *United States v. Booker,* this court recognized that "Congress was concerned about the emergence of a new, smokable form of cocaine that was more dangerous than powder cocaine, less expensive, and highly addictive." 70 F.3d at 493. In contrast, the Second Circuit in *United States v. Jackson* had found even highly impure, unsmokable, soft and oily cocaine to be subject to the more severe penalty merely because it fit the scientific definition of "cocaine base." *Jackson,* 968 F.2d at 159–60. The Commission explicitly cited *Shaw* and *Jackson* as the split the amendment would resolve. U.S.S.G.App. C., amend. 487. The amendment adopts *Shaw*'s approach, which rejected the inclusive scientific definition of "cocaine base" since that definition was inconsistent with the apparent intent of Congress to more severely punish "crack" dealers. *See Shaw,* 936 F.3d at 415–16.

On this basis, we hold that requiring proof that the cocaine has been processed with sodium bicarbonate would impose too rigid a standard to comport with congressional intent. The question does not turn on what particular method is used to fashion crack or on its visual appearance, although it is *"usually"* made from sodium bicarbonate and *"usually"* appears in lumpy, rocklike form. The issue is whether the drug is "crack" as the term is generally understood.

■ We hold that while crack might generally be produced using sodium bicarbonate, production with sodium bicarbonate is not the exclusive preparation method recognized for purposes of § 2D1.1(c). Regardless of preparation method, however, the government has the burden of showing that the cocaine base distributed was indeed crack. *See James,* 78 F.3d at 855–59. In the present case, a veteran narcotics agent and a forensic chemist agreed that Abdul's cocaine base was crack cocaine. While the evidence on this point was not overwhelming, Abdul presented no contradictory evidence; he merely asserted that the government failed

to prove the drugs were manufactured using sodium bicarbonate.[3] Abdul fails to demonstrate that the district court clearly erred in finding that the cocaine for which he was responsible was "crack."

For these reasons, we find no fault with Abdul's 262–month prison sentence.

JUDGMENT AFFIRMED.

---

**3.** We note that Abdul apparently admitted the type of drug to the court, under oath, during the plea colloquy. The district judge began discussing the charges by explaining that Abdul had been indicted for possessing with the intent to distribute "more than 50 grams of a substance containing cocaine base, *or a controlled substance which is also commonly called crack.*" Plea Trans. at 6 (emphasis added). When the judge immediately asked Abdul if that was his understanding of the charge, Abdul replied, "Yes, sir." *Id.*

"There can be no question that admissions to the court by a defendant during a guilty plea colloquy can be relied upon by the court at the sentencing stage." *James,* 78 F.3d at 856. The district court here did not rely on the plea exchange in finding Abdul responsible for possessing crack. While we agree it is not dispositive, we find Abdul's admission supports the district court's later determination that the drug at issue was crack. *Cf. United States v. Hall,* 109 F.3d 1227, 1236 (7th Cir.1997) ("Witness after witness testified that the substance defendants distributed was 'crack.' This testimony is particularly persuasive given that the Guidelines define 'crack' with reference to how that term is used on the street."), *cert. denied,* —— U.S. ——, 118 S.Ct. 153, —— L.Ed.2d —— (1997).